[Cite as *Soley v. Soley*, 2014-Ohio-3965.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Robert Stephen Soley

Court of Appeals No. H-13-028

Appellant

Trial Court No. CVH 20120481

v.

Katalin Terezia Soley, et al.

**DECISION AND JUDGMENT**

Appellees

Decided: September 12, 2014

* * * * *

Robert W. Gentzel and James J. Martin, for appellant.

Justin C. Miller, for appellee, Katalin T. Soley.

Robert B. Daane, Danielle A. Higgins, and Mark Coriell, for appellees,
Robert Harris and Mary Lou Harris.

* * * * *

**YARBROUGH, P.J.**

## I. Introduction

{¶ 1} Appellant, Robert Soley, appeals the judgment of the Huron County Court of

Common Pleas, granting summary judgment in favor of appellees, Katalin Soley, Robert

Harris, and Mary Lou Harris (Mr. and Mrs. Harris). For the following reasons, we affirm, in part, and reverse, in part.

## A. Facts and Procedural Background

{¶ 2} This appeal originates from a dispute concerning Katalin's sale of a piece of real property located at 231 Butler Rd., New London, Huron County, Ohio, to Mr. and Mrs. Harris. Robert and Katalin were married on December 23, 1990. During the course of their marriage, Robert decided to deed a portion of his real property to Katalin in an effort to evade creditors. According to Robert, the property was conveyed to Katalin, free of charge, under a constructive trust in which Katalin was to hold title of the real estate for Robert's benefit and deed the property back to him upon demand.

{¶ 3} Subsequent to the transfer, Robert and Katalin began experiencing marital difficulties. As a result, Robert recorded an affidavit of dower with the Huron County Recorder on March 30, 2008, evidencing the fact that Katalin was the owner of the property and that he was entitled to a dower interest as her husband. Eventually, the parties separated and divorce proceedings were initiated in Budapest, Hungary, which is where the parties were living at the time. According to a translated judgment entry from the Hungarian court, the parties were ultimately divorced on May 10, 2011. However, the division of the marital assets had not yet occurred.[1] Notably, the court expressly

---

[1] Robert subsequently appealed the Hungarian court's decision, seeking to delay the divorce until the marital property was divided. The appellate court rejected Robert's argument and the appeal was denied on March 12, 2012.

declined to distribute the real property located in Huron County, as the court found that property within the United States was beyond its jurisdiction.

{¶ 4} Four months after the parties were divorced, but before the Hungarian assets were distributed, Katalin reached an agreement with Mr. and Mrs. Harris to sell the real property located in Huron County for $170,000. The property was then transferred to Mr. and Mrs. Harris by warranty deed.

{¶ 5} Seeking to set aside the conveyance, Robert filed his complaint in the underlying action on June 3, 2012, alleging that the transfer was fraudulent because the property was subject to a constructive trust. Moreover, Robert alleged that Mr. and Mrs. Harris knew or should have known that the property was subject to a constructive trust in Robert's favor. As a result, Robert sought damages in excess of $25,000 and also petitioned the court to set aside the conveyance and restore title to the real estate in his name.

{¶ 6} On January 7, 2013, appellees filed a motion for summary judgment. In their motion, appellees argued that Katalin, as the sole owner of the property, lawfully conveyed the property to Mr. and Mrs. Harris. Because the marriage was dissolved prior to the conveyance, appellees asserted that Robert had no interest in the property. Further, appellees averred that Mr. and Mrs. Harris were bona fide purchasers for value insofar as they were without actual or constructive notice of Robert's claimed interest in the property. As to Robert's constructive trust argument, appellees contended that the argument must fail under the statute of frauds because the agreement was not reduced to

3.

writing. Finally, appellees argued that Robert was not entitled to recover on the basis of any dower interest he may have had in the property, because such interest was extinguished by operation of law as of the date the marriage was dissolved.

{¶ 7} In response to appellees' arguments, Robert argued that the marriage was not dissolved at the time of the conveyance because the marital estate had not been divided by the Hungarian court. Thus, he contended that he possessed a dower interest in the property at the time of the sale. Moreover, Robert noted the fact that the property had not been classified as Katalin's separate property at the time of the sale as the marital assets had not yet been divided. He contended that the property was in fact his own separate property because he owned the property prior to the marriage. In the alternative, Robert claimed that the property would at least amount to marital property, entitling him to a share in the proceeds from its sale. Robert also took issue with appellees' argument that the constructive trust must be in writing in order to be enforceable under the statute of frauds. He argued that a constructive trust is unwritten by its very nature. In supporting his arguments, Robert submitted several affidavits. In his own affidavit, he averred that he transferred the property to Katalin "with the specific understanding by both parties that the sole purpose of the transfer was to avoid [his] creditors and that Katalin * * * would deed the property back to [him] upon demand."

{¶ 8} Upon consideration of the parties' arguments, the trial court issued its decision on July 1, 2013. In its decision, the trial court granted Mr. and Mrs. Harris' motion for summary judgment, thereby quieting title to the property in their name. At

4.

this point, Katalin had been dismissed from the action due to service of process issues. When she was later properly served, she renewed her motion for summary judgment, which was granted on December 4, 2013. In granting Katalin's motion for summary judgment, the trial court found that Robert's claim of a constructive trust was barred by the statute of frauds. The court further found that the parties were divorced at the time of the sale and that, as such, Robert's dower interest was extinguished. Robert's timely appeal followed.

### B. Assignments of Error

{¶ 9} On appeal, Robert assigns the following errors for our review:

FIRST ASSIGNMENT OF ERROR: IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO GRANT SUMMARY JUDGMENT TO APPELLEE, KATALIN SOLEY, AND TO ORDER ATTORNEY CORIELL TO DISBURSE TO HER THE BALANCE OF THE SALE PROCEEDS AS GENUINE ISSUES OF MATERIAL FACT EXIST AND SAID APPELLEE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

SECOND ASSIGNMENT OF ERROR: IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO FIND AS A MATTER OF LAW THAT APPELLANT'S CLAIM OF A CONSTRUCTIVE TRUST WAS BARRED BY THE OHIO STATUTE OF FRAUDS.

THIRD ASSIGNMENT OF ERROR: IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO GRANT SUMMARY JUDGMENT QUIETING

TITLE TO THE PROPERTY TO APPELLEES HARRIS AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER SAID APPELLEES WERE BONA FIDE PURCHASERS OR WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

FOURTH ASSIGNMENT OF ERROR: IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO FIND THAT ANY DOWER RIGHTS OF APPELLANT WERE NOT VESTED AND HAD BEEN TERMINATED BY DIVORCE PRIOR TO THE SALE OF THE PROPERTY BY KATALIN SOLEY.

## II. Analysis

{¶ 10} For ease of discussion, we will address Robert's assignments of error out of order. We will begin by addressing Robert's first, second, and fourth assignments of error, all of which challenge the trial court's granting of summary judgment in favor of Katalin. We will then turn to Robert's third assignment of error, in which he argues that the trial court erred in granting summary judgment in favor of Mr. and Mrs. Harris.

### A. Summary Judgment on Katalin's Claims

{¶ 11} In Robert's first, second, and fourth assignments of error, he argues that the trial court erroneously granted summary judgment in favor of Katalin.

{¶ 12} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241

6.

(1996); *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1)  that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 13} In his fourth assignment of error, Robert contends that the trial court erroneously determined that his dower rights had not vested by the time Katalin transferred the property.

{¶ 14} In Ohio, a spouse's dower right is codified in R.C. 2103.02, which states, in relevant part:

> A spouse who has not relinquished or been barred from it shall be endowed of an estate for life in one third of the real property of which the consort was seized as an estate of inheritance at any time during the marriage.  Such dower interest shall terminate upon the death of the consort except:

7.

(A)  To the extent that any such real property was conveyed by the deceased consort during the marriage, the surviving spouse not having relinquished or been barred from dower therein;

(B)  To the extent that any such real property during the marriage was encumbered by the deceased consort by mortgage, judgment, lien except tax lien, or otherwise, or aliened by involuntary sale, the surviving spouse not having relinquished or been barred from dower therein.  * * *

*Dower interest shall terminate upon the granting of an absolute divorce in favor of or against such spouse by a court of competent jurisdiction within or without this state*. (Emphasis added.)

{¶ 15} The dower interest described above is inchoate and contingent, vesting only upon the death of the spouse who owns the property.  *Stand Energy Corp. v. Epler*, 163 Ohio App.3d 354, 2005-Ohio-4820, 837 N.E.2d 1229, ¶ 11 (10th Dist.), citing *Goodman v. Gerstle*, 158 Ohio St. 353, 358, 109 N.E.2d 489 (1952).

{¶ 16} In light of the foregoing, we find that the trial court properly determined that Robert's dower right had not vested at the time of the transfer.  Indeed, the statute makes it clear that Robert's dower right was extinguished upon the divorce of the parties in Hungary.  Therefore, Robert's argument concerning dower is misplaced.

{¶ 17} Accordingly, Robert's fourth assignment of error is not well-taken.

{¶ 18} In his first and second assignment of error, Robert argues that genuine issues of material fact existed as to whether the property in question was subject to a

8.

constructive trust. In response, Katalin contends that the burden was on Robert to demonstrate the existence of a constructive trust. She argues that Robert failed to present evidence to establish that a constructive trust was formed at the time of Robert's conveyance of the property. Additionally, Katalin argues that the trial court properly held that the statute of frauds requires the alleged constructive trust to be in writing.

{¶ 19} In *Ferguson v. Owens*, 9 Ohio St.3d 223, 459 N.E.2d 1293 (1984), the Supreme Court of Ohio defined a constructive trust as

> "a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commissions of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice. * * *" *Id.* at 225, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221.

{¶ 20} Although a constructive trust is usually imposed when a party acquires property through fraud, it may also be invoked when property was acquired without fraud. *Id.* at 226. "A constructive trust may not be impressed, however, just because there has been a moral wrong or abuse of a business or other relationship; rather, it requires a showing of a wrongful acquisition or retention of property." *Sorgen v. Sorgen*,

6th Dist. Ottawa No. OT-94-035, 1995 WL 136203, *4 (Mar. 31, 1995), citing *Croston v. Croston*, 18 Ohio App.2d 159, 247 N.E.2d 765 (4th Dist.1969).

{¶ 21} With respect to the trial court's conclusion that the alleged oral constructive trust is barred by the statute of frauds, we note that Ohio courts have previously held that constructive trusts are not subject to the statute of frauds. *See Teeter v. Teeter*, 7th Dist. Carroll No. 13 CA 887, 2014-Ohio-1471, ¶ 16 (finding that an agreement to re-convey real property would ordinarily be subject to the statute of frauds, except in the case of constructive trusts or promissory estoppel), citing *Hunter v. Green*, 5th Dist. Coshocton No. 12-CA-2, 2012-Ohio-5801; *see also Sorgen*, *supra* (remanding the case back to the trial court to determine whether an agreement to convey real property was excluded from the statute of frauds upon a finding that a constructive trust did not exist). Thus, the trial court was incorrect in rejecting Robert's constructive trust argument on the basis that it was barred by the statute of frauds.

{¶ 22} Nonetheless, Katalin argues that a constructive trust does not exist on these facts. We agree. As noted above, a constructive trust is imposed where there has been a showing of a wrongful acquisition or retention of property. The evidence contained in the record in the form of three affidavits filed by Robert along with his memorandum in opposition to summary judgment demonstrates that Robert deeded the property to Katalin "for the sole purpose of placing the property beyond the reach of his creditors." Robert alleged that the transfer was never intended as a gift. However, "[a] constructive trust is imposed 'not because of the intention of the parties but because the person holding the

title to property would profit by a wrong, or would be unjustly enriched if [she] were permitted to keep the property.'" *Univ. Hosps. Of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, ¶ 60, quoting Restatement of the Law, Restitution, Section 160, Comment b. On the evidence contained in the record before us, we cannot find any wrongdoing in Katalin's acquisition or retention of the property. Therefore, we conclude that the trial court did not err in dismissing Robert's constructive trust argument.

{¶ 23} Additionally, Robert argued on summary judgment that the proceeds from the sale of the property must be distributed incident to the divorce because the property constitutes a portion of the marital estate.

{¶ 24} R.C. 3105.171 provides the definition for marital property and separate property in the context of divorce proceedings in Ohio. Relevant to this issue, R.C. 3105.171(B) provides, in relevant part:

> In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section.

{¶ 25} Here, a determination as to whether the real property is marital property or separate property has not been made. As indicated above, the Hungarian court in which

11.

the divorce proceedings were initiated expressly declined to exercise jurisdiction over the property. Thus, we must remand this matter to the trial court for a determination of whether the property is marital or separate, and a concomitant equitable division of the property, if necessary, under R.C. 3105.171(B). Accordingly, Robert's first and second assignments of error are well-taken, in part.

### B. Summary Judgment on Mr. and Mrs. Harris's Claims

{¶ 26} In Robert's third assignment of error, he argues that the trial court erred in granting summary judgment in favor of Mr. and Mrs. Harris as questions of fact existed regarding whether they were bona fide purchasers.

> "A 'bona fide purchaser' is one who acquires legal title to real estate for valuable consideration, in good faith, and without knowledge or notice of another's equitable interest in that property." *Bergholtz Coal Holding Co. v. Dunning*, 11th Dist. Lake No. 2004-L-209, 2006-Ohio-3401, ¶ 32, citing *Shaker Corlett Land Co. v. Cleveland*, 139 Ohio St. 536, 41 N.E.2d 243 (1942), paragraph three of the syllabus.

{¶ 27} Here, Robert argues that Mr. and Mrs. Harris "had actual and constructive notice of Appellant's claim to this property before entering into the transaction. They had a duty to make further inquiry and did not do so." Robert's argument rests on the assumption that a constructive trust exists in his favor and that his dower interest constituted a competing claim against the property. However, we have already rejected each of these arguments in our discussion of his assignments of error pertaining to

12.

Katalin. Despite Robert's reliance on the "Affidavit to Preserve Dower" that was recorded prior to the sale of the property, the record confirms that Mr. and Mrs. Harris bought the property after the parties were divorced by the Hungarian court on May 10, 2011, free of any prior dower interest. Notably, the deed transferring the property from Katalin to Mr. and Mrs. Harris indicates that Katalin was "divorced and unremarried" at the time of the transfer. Further, the record is devoid of any evidence suggesting that Mr. and Mrs. Harris were aware of the alleged oral agreement between Robert and Katalin. In light of the foregoing, we conclude that the trial court did not err in granting summary judgment in favor of Mr. and Mrs. Harris upon a finding that they were bona fide purchasers.

{¶ 28} Accordingly, Robert's third assignment of error is not well-taken.

### III. Conclusion

{¶ 29} For the foregoing reasons, the judgment of the Huron County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded to the trial court so that it may classify the real property at issue as either marital or separate, and make an equitable division of the property under R.C. 3105.171(B), if necessary. Costs are to be split evenly between the parties pursuant to App.R. 24.

Judgment affirmed, in part,
And reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                    _____
                                                            JUDGE

Stephen A. Yarbrough, P.J.

                                            _____
James D. Jensen, J.                                        JUDGE
CONCUR.

                                            _____
                                                            JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.