[Cite as *Soley v. Soley*, 2017-Ohio-2817.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Robert Stephen Soley

Court of Appeals No. H-16-021

Appellee

Trial Court No. CV 2012 0481

v.

Katalin Terezia Soley, et al.

**DECISION AND JUDGMENT**

Appellant

Decided: May 12, 2017

* * * * *

Robert W. Gentzel and James J. Martin, for appellee.

Kathleen M. Amerkhanian, for appellant.

* * * * *

**JENSEN, P.J.**

**I. Introduction**

**{¶ 1}** Appellant, Katalin Soley, appeals the judgment of the Huron County Court

of Common Pleas, adopting the decision of the magistrate, which found that certain real

property located in Huron County was appellee's, Robert Soley, separate property. Because we find that the trial court erred in classifying the property, we reverse.

## A. Facts and Procedural Background

{¶ 2} This is the second time these parties have appeared before this court in this action. In the first appeal, we resolved a dispute concerning Katalin's sale of the Huron County property located at 231 Butler Rd., New London, Ohio. *Soley v. Soley*, 6th Dist. Huron No. H-13-028, 2014-Ohio-3965. In our decision, we recited the relevant facts as follows:

Robert and Katalin were married on December 23, 1990. During the course of their marriage, Robert decided to deed a portion of his real property to Katalin in an effort to evade creditors. According to Robert, the property was conveyed to Katalin, free of charge, under a constructive trust in which Katalin was to hold title of the real estate for Robert's benefit and deed the property back to him upon demand.

Subsequent to the transfer, Robert and Katalin began experiencing marital difficulties. As a result, Robert recorded an affidavit of dower with the Huron County Recorder on March 30, 2008, evidencing the fact that Katalin was the owner of the property and that he was entitled to a dower interest as her husband. Eventually, the parties separated and divorce proceedings were initiated in Budapest, Hungary, which is where the parties were living at the time. According to a translated judgment entry from the Hungarian court, the parties were ultimately divorced on May 10,

2011. However, the division of the marital assets had not yet occurred. Notably, the court expressly declined to distribute the real property located in Huron County, as the court found that property within the United States was beyond its jurisdiction.

Four months after the parties were divorced, but before the Hungarian assets were distributed, Katalin reached an agreement with [Robert and Mary Lou] Harris to sell the real property located in Huron County for $170,000. The property was then transferred to Mr. and Mrs. Harris by warranty deed.

Seeking to set aside the conveyance, Robert filed his complaint in the underlying action on June 3, 2012, alleging that the transfer was fraudulent because the property was subject to a constructive trust. Moreover, Robert alleged that Mr. and Mrs. Harris knew or should have known that the property was subject to a constructive trust in Robert's favor. As a result, Robert sought damages in excess of $25,000 and also petitioned the court to set aside the conveyance and restore title to the real estate in his name.

On January 7, 2013, [Katalin, along with Mr. and Mrs. Harris,] filed a motion for summary judgment. In their motion, [the movants] argued that Katalin, as the sole owner of the property, lawfully conveyed the property to Mr. and Mrs. Harris. Because the marriage was dissolved prior to the conveyance, [the movants] asserted that Robert had no interest in the

property. Further, [the movants] averred that Mr. and Mrs. Harris were bona fide purchasers for value insofar as they were without actual or constructive notice of Robert's claimed interest in the property. As to Robert's constructive trust argument, [the movants] contended that the argument must fail under the statute of frauds because the agreement was not reduced to writing. Finally, [the movants] argued that Robert was not entitled to recover on the basis of any dower interest he may have had in the property, because such interest was extinguished by operation of law as of the date the marriage was dissolved.

In response to [the movants'] arguments, Robert argued that the marriage was not dissolved at the time of the conveyance because the marital estate had not been divided by the Hungarian court. Thus, he contended that he possessed a dower interest in the property at the time of the sale. Moreover, Robert noted the fact that the property had not been classified as Katalin's separate property at the time of the sale as the marital assets had not yet been divided. He contended that the property was in fact his own separate property because he owned the property prior to the marriage. In the alternative, Robert claimed that the property would at least amount to marital property, entitling him to a share in the proceeds from its sale. Robert also took issue with [the] argument that the constructive trust must be in writing in order to be enforceable under the statute of frauds. He argued that a constructive trust is unwritten by its very nature. In

supporting his arguments, Robert submitted several affidavits. In his own affidavit, he averred that he transferred the property to Katalin "with the specific understanding by both parties that the sole purpose of the transfer was to avoid [his] creditors and that Katalin * * * would deed the property back to [him] upon demand."

Upon consideration of the parties' arguments, the trial court issued its decision on July 1, 2013. In its decision, the trial court granted Mr. and Mrs. Harris' motion for summary judgment, thereby quieting title to the property in their name. At this point, Katalin had been dismissed from the action due to service of process issues. When she was later properly served, she renewed her motion for summary judgment, which was granted on December 4, 2013. In granting Katalin's motion for summary judgment, the trial court found that Robert's claim of a constructive trust was barred by the statute of frauds. The court further found that the parties were divorced at the time of the sale and that, as such, Robert's dower interest was extinguished. Robert's timely appeal followed. *Soley*, 6th Dist. Huron No. H-13-028, 2014-Ohio-3965, at ¶ 2-8.

{¶ 3} On appeal, we concluded that Robert deeded the Huron County property to Katalin "'for the sole purpose of placing the property beyond the reach of his creditors.'" *Id.* at ¶ 22. We found no evidence of any wrongdoing in Katalin's acquisition or retention of the property, and thus concluded that the trial court did not err in rejecting Robert's constructive trust argument. *Id.* However, we found that the matter needed to

5.

be remanded to the trial court because a determination as to whether the real property was marital property or separate property had not been made. *Id.* at ¶ 25. We noted that the Hungarian court, in which the divorce proceedings were initiated, expressly declined to exercise jurisdiction over the property. *Id.* Ultimately, we remanded the matter for "a determination of whether the property is marital or separate, and a concomitant equitable division of the property, if necessary, under R.C. 3105.171(B)." *Id.*

{¶ 4} On remand, the parties appeared for an evidentiary hearing before a magistrate on the issue of whether the subject property was marital or separate. At the hearing, several individuals testified, including Robert and Katalin. The magistrate issued his decision, in which he concluded that the subject property was Robert's separate property. The magistrate specifically found that Robert's transfer of the property to Katalin did not constitute a gift and therefore did not convert the separate property into marital property. The magistrate determined that Robert did not possess the requisite donative intent when he executed the quitclaim deed for the purpose of avoiding his creditors. Moreover, the magistrate stated that, "because the parcel remained wholly traceable from prior to the Soley marriage until sale to Defendants Harris, the execution of the quitclaim deed conveying [Robert's] interest therein to [Katalin] had absolutely no impact on the separate property characterization of the Butler road property." Consequently, the magistrate found that Robert was entitled to the $85,000 in proceeds from the sale of the property that were being held in escrow, as well as a judgment against Katalin for the remaining $85,000 that she had already received.

6.

**{¶ 5}** Two weeks after the magistrate issued his decision, Katalin filed objections with the trial court. Upon consideration, the trial court overruled Katalin's objections and adopted the magistrate's decision. In its judgment entry, the court directed the following:

1. After expiration of the appeal period following entry of judgment, Attorney Mark Coriell shall be and hereby is directed to disburse the amount of Eighty-five Thousand Dollars ($85,000) to Plaintiff Robert Stephen Soley;

2. Judgment shall be and hereby is granted in favor of Plaintiff Robert Stephen Soley and against Defendant Katalin Terzia Soley in the amount of Eighty-five Thousand Dollars ($85,000), together with statutory interest thereon from the date of judgment;

3. Any additional costs of these proceedings are assessed to Defendant Katalin Terzia Soley.

**{¶ 6}** It is from this order that Katalin has timely appealed.

## B. Assignments of Error

**{¶ 7}** On appeal, Katalin assigns the following errors for our review:

Assignment of Error I: The trial court's order is void as Ohio courts do not have subject matter jurisdiction to make a determination of whether or not property is marital or separate property outside of a divorce or legal separation proceeding.

Assignment of Error II: The trial court erred in finding the subject property to be "separate" property in favor of Robert and such a finding

constituted an abuse of discretion, plain error, and is against the manifest weight of the evidence.

Assignment of Error III: The trial court erred when it determined that the relevant marriage date for purposes of applying O.R.C. 3105.171 was a marriage date that had previously been invalidated as bigamous by the Sixth District Court of Appeals.

Assignment of Error IV: The trial court's determination that Katalin Soley was not entitled to a distributive award was an abuse of discretion, plain error, and against the manifest weight of the evidence.

## II. Analysis

### A. Subject Matter Jurisdiction Under R.C. 3105.171(B)

{¶ 8} In her first assignment of error, Katalin argues that the trial court's order is void because the court did not possess subject matter jurisdiction to classify the property as marital or separate under R.C. 3105.171(B).

{¶ 9} The question of whether a trial court possesses subject matter jurisdiction is a question of law that we review de novo. *WFAL Constr. v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 14AP-985, 2015-Ohio-3044, ¶ 6. The authority to classify property as either marital or separate and subsequently divide the property equitably between spouses is granted to courts under R.C. 3105.171(B). Under that section, courts are vested with such authority in the context of divorce and legal separation proceedings.

8.

{¶ 10} As noted above in our recitation of the facts, this case presents the unique circumstance in which a foreign court has granted the parties a divorce while expressly declining to exercise jurisdiction over a piece of property located in the United States. Given the foreign court's refusal to classify and divide the subject property, Robert brought this action before the trial court in order to set aside Katalin's allegedly improper conveyance of the property. While the action was not styled as a divorce or legal separation proceeding as such, we find that the action was a necessary extension of the property distribution action that was pending before the Hungarian court, and was therefore akin to a divorce or legal separation action under R.C. 3105.171(B). Indeed, the trial court is the only court that would possess subject matter jurisdiction over the subject property in light of the Hungarian court's refusal to exercise such jurisdiction.

{¶ 11} Were we to conclude that the trial court lacks subject matter jurisdiction, we would leave the parties with no venue in which to resolve their dispute as to the classification of the property incident to divorce. We refuse to construe R.C. 3105.171(B) in such a narrow fashion.

{¶ 12} In support of her argument that the trial court lacked subject matter jurisdiction under R.C. 3105.171(B) to classify the property, Katalin cites the decision of the Supreme Court of Ohio in *Bolinger v. Bolinger*, 49 Ohio St.3d 120, 551 N.E.2d 157 (1990). In that case, the court held that a trial court's subject matter jurisdiction to award permanent alimony and to formulate an equitable division of marital assets under R.C.

9.

3105.011, [1] 3105.17, [2] and 3105.18, [3] commences when either party files a complaint for divorce and a division of the marital property. *Id.* at 123.

{¶ 13} Notably, *Bolinger* did not address Katalin's jurisdictional argument under R.C. 3105.171(B) concerning the classification and distribution of property in a divorce or legal separation proceeding. Rather, the court was confronted with the question of whether the trial court was required to retry a divorce action on remand from the court of appeals on the basis that the subject matter jurisdiction of a domestic relations court is "markedly different from that in an alimony-only action." *Id.* at 121. The Supreme Court of Ohio rejected this argument, finding that the aforementioned statutory sections

---

[1] R.C. 3105.011 provides:

> The court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist with respect to any such matter.

[2] R.C. 3105.17 states, in relevant part:

> (A) Either party to the marriage may file a complaint for divorce or for legal separation, and when filed the other may file a counterclaim for divorce or for legal separation. * * * The court of common pleas may grant legal separation on a complaint or counterclaim, regardless of whether the parties are living separately at the time the complaint or counterclaim is filed * * *.

[3] The version of R.C. 3105.18 that was in effect at the time of the court's decision in *Bolinger* provided, in relevant part:

> (A) In divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony it considers reasonable to either party. The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court considers equitable.

10.

"make it abundantly clear that the court of common pleas has wide latitude in determining the appropriateness of as well as the amount of alimony, regardless of whether the complaint and counterclaims request alimony only, a divorce, or both a divorce and alimony." *Id.* at 122. Thus, the court found that the trial court possessed subject matter jurisdiction to award permanent alimony and to formulate an equitable division of the marital assets. *Id.* at 123.

{¶ 14} Because the court in *Bolinger* did not address the issue of subject matter jurisdiction under R.C. 3105.171(B), and expressly relied on other statutory sections to support its conclusion that the trial court possessed broad subject matter jurisdiction to award alimony and divide the marital assets, we find that *Bolinger* is inapposite here.

{¶ 15} In sum, we hold that the trial court possessed subject matter jurisdiction under R.C. 3105.171(B) to comply with our remand instructions to determine whether the property was marital or separate, and, if necessary, equitably divide the property. We recognize the unusual procedural backdrop of this case. Therefore, we stress that this case is limited to its facts and should not be broadly construed.

{¶ 16} Accordingly, Katalin's first assignment of error is not well-taken.

### B. Classification of the Property

{¶ 17} In her second assignment of error, Katalin argues that the trial court's finding that the subject property was Robert's separate property was against the manifest weight of the evidence.

{¶ 18} "On appeal, a trial court's classification of property as marital or separate is reviewed under a manifest weight standard." *Miller v. Miller*, 6th Dist. Sandusky No. S-

11.

12-035, 2013-Ohio-5071, ¶ 22. The standard of review for manifest weight is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. As such, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. In so doing, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 19} Under R.C. 3105.171(A)(6)(a)(ii), any real or personal property that was acquired by one spouse prior to the date of the marriage is considered separate property. However, separate property can be converted to marital property if one spouse grants an interest in the property to the other spouse. *Helton v. Helton*, 114 Ohio App.3d 683, 686, 683 N.E.2d 1157 (2d Dist.1996) ("Numerous appellate districts in Ohio have recognized that separate real property can be transformed by the grantor spouse into marital property by a gratuitous transfer to the grantee spouse of a present interest in the property.") Generally, conversion occurs when a donor spouse makes an inter vivos gift of the property to the donee spouse. *Id.* at 685.

{¶ 20} The essential elements of an inter vivos gift are: "(1) [the] intent of the donor to make an immediate gift, (2) delivery of the property to the donee, [and] (3) acceptance of the gift by the donee." *Barkley v. Barkley*, 119 Ohio App.3d 155, 694 N.E.2d 989 (4th Dist.1997), fn. 2, citing *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 4 N.E.2d 917 (1936). Generally, the donee has the burden of showing, by clear and

12.

convincing evidence, that the donor made an inter vivos gift. *Kovacs v. Kovacs*, 6th Dist. Sandusky No. S-09-039, 2011-Ohio-154, ¶ 12, citing *Helton* at 686.

{¶ 21} Here, the parties do not dispute the fact that Robert acquired the property prior to the marriage. Thus, the property was initially Robert's separate property. Katalin argues that Robert's actions during the marriage, namely the transferring of the title to the property to her in the form of a quitclaim deed, transmuted the property.

{¶ 22} We find that the mere execution of a deed transferring title from one spouse to another does not convert property that is otherwise separate property into marital property. Indeed, R.C. 3105.171(H) states: "Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." Under this section, Ohio courts employ "a flexible totality-of-the-circumstances test to determine whether transmutation of the separate property has occurred." *Hippely v. Hippely*, 7th Dist. Columbiana No. 01 CO 14, 2002-Ohio-3015, ¶ 18. Thus, "the form of title is relevant to, but not conclusive of, the classification of property as being either marital or separate." *Barkley*, *supra*, at 161.

{¶ 23} Having found no merit to Katalin's argument that Robert's execution of the quitclaim deed converted the subject property into marital property per se, we nonetheless find that the magistrate erred in completely disregarding the relevance of the transfer of title when he stated that "the execution of the quitclaim deed conveying [Robert's] interest therein to [Katalin] had absolutely no impact on the separate property characterization of the Butler road property." Indeed, Ohio courts have held that the

13.

transfer of title by execution of a deed "can be some evidence of the parties' intent as to the nature of the asset being marital or separate." *Gallo v. Gallo*, 11th Dist. Lake No. 2000-L-208, 2002-Ohio-2815, ¶ 25.

{¶ 24} The Tenth District examined a situation similar to the present case in *Neighbarger v. Neighbarger*, 10th Dist. Franklin No. 05AP-651, 2006-Ohio-796. In that case, the husband transferred farmland via quitclaim deed to his wife shortly before their marriage. Because the husband acquired the property prior to the marriage, it was his separate property that would normally not be subject to equitable distribution. Upon divorce, the husband claimed that the farmland remained his separate property because he did not intend to make a gift to the wife by transferring the property to her. Rather, the husband argued that his motive in transferring the property was to shield it from potential civil judgments against him. The Tenth District rejected the husband's argument, stating:

> There is no question that [husband] intended, in 1990 [the year in which husband transferred the property to wife], to create a legal barrier between himself and the property. His stated objective was to shelter his assets from any financial risk arising from the criminal charges against him. If the outcome of the criminal trial had been different, he most certainly would have argued that he had no assets to satisfy whatever financial liability might have arisen, including his child support obligations. Having made that choice for his own benefit in 1990, to the detriment of his children and creditors, we will not allow [husband] to turn his deliberate action into a legal fiction for his own benefit again. He intended to transfer

the property and, as evidenced by the quitclaim deed, he did transfer the property. *Id.* at ¶ 25.

{¶ 25} Relying on the *Neighbarger* decision, the Third District has also held that the relinquishment of all legal rights to farmland by transfer of the property via quitclaim deed to a spouse for the purpose of avoiding creditors constitutes a gift for purposes of classifying the property as separate or marital property. *Strasburg v. Strasburg*, 3d Dist. Auglaize No. 2-10-12, 2010-Ohio-3672, ¶ 22. In *Strasburg*, the husband testified that he inherited farmland from his father's estate during the marriage, and that he conveyed the property to his wife via quitclaim deed because he was concerned about the risk that he would be sued. *Id.* Like the court in *Neighbarger*, the Third District found that the husband

> transferred his inherited farmland via quitclaim deed immediately upon his inheritance, and that, had [husband] been sued, he doubtlessly would have argued that the farmland was [wife's] sole property, and was not an asset subject to any ensuing financial liability. * * * Regardless of [husband's] testimony that he did not intend to relinquish ownership or waive his rights to the property, the fact remains that [husband] deeded the farmland to [wife] solely via quitclaim deed, and did not retain any reserved rights or joint rights to the property. Thus, [husband's] testimony about his motives for the transfer was wholly inconsistent with his actions in making the transfer. As [husband's] testimony established that he relinquished all legal rights to the farmland upon its transfer to [wife], we cannot find that the

trial court erred in concluding that the farmland was not [husband's] separate property. *Id.*

**{¶ 26}** Similar to the husbands in *Neighbarger* and *Strasburg*, the record in this case reveals that Robert deeded the Huron County property to Katalin for the sole purpose of placing the property beyond the reach of his creditors. We are in agreement with the Third and Tenth Districts that a transferor of property acts with donative intent when transferring property for the purpose of avoiding creditors. *See Wolf-Sabatino v. Sabatino*, 10th Dist. Franklin No. 10AP-1161, 2011-Ohio-6819, ¶73, quoting *Dever v. Dever*, 12th Dist. Clermont No. CA98-07-050, 1999 Ohio App. LEXIS 1625 (Apr. 12, 1999) ("Courts have held that when 'a transferor transfers his interest in real property for a specific purpose other than ownership, the transferor has demonstrated donative intent.'"). Therefore, we find that the trial court's determination that Robert lacked donative intent when he transferred the subject property to Katalin was against the manifest weight of the evidence. By extension, we find that the court's classification of the property as Robert's separate property was also against the manifest weight of the evidence since Robert gifted the property to Katalin during the marriage, making the property marital.

**{¶ 27}** Accordingly, we find Katalin's second assignment of error well-taken. Having found that the subject property was marital property pursuant to an inter vivos gift, we must remand this matter to the trial court once again for the court to equitably distribute the property. Thus, Katalin's remaining assignments of error are moot.

### III.  Conclusion

**{¶ 28}** For the foregoing reasons, the judgment of the Huron County Court of Common Pleas is reversed, and this matter is remanded to the trial court so that it may make an equitable division of the property under R.C. 3105.171(B).  Costs are to be assessed to appellee pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                            _____
                                                                JUDGE

James D. Jensen, P.J.

Christine E. Mayle, J.                 _____
CONCUR.                                                  JUDGE

                                                        _____
                                                                JUDGE