[Cite as *Miller v. Miller*, 2018-Ohio-5285.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SANDUSKY COUNTY

DANIEL A. MILLER,

    PLAINTIFF-APPELLANT/
    CROSS-APPELLEE,

  v.

AMY M. MILLER,

    DEFENDANT-APPELLEE/
    CROSS-APPELLANT.

CASE NO. S-18-19

**O P I N I O N**

December 28, 2018

Appeal from Sandusky County Common Pleas Court
Domestic Relations Division
Trial Court No. 14DR1122

Judgment Affirmed in Part and Reversed in Part,
Cause Remanded

Date of Decision:

**APPEARANCES:**

    *Andrew R. Mayle* **for Appellant/Cross-Appellee**

    *Lisa M. Snyder* **for Appellee/Cross-Appellant**

**WILLAMOWSKI, P.J.**

{¶1} Plaintiff-appellant, cross-appellee Daniel A. Miller ("Daniel") and defendant-appellee, cross-appellant Amy M. Miller ("Amy") appeal the judgment of the Sandusky County Court of Common Pleas, alleging the trial court did not correctly follow the ruling of this Court in *Miller v. Miller*, 6th Dist. Sandusky No. S-16-27, 2017-Ohio-7646, ¶ 11. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

*Facts and Procedural History*

{¶2} Daniel and Amy were married in 1986. Doc. 1. In 2012, Amy had inherited roughly $276,585.00 from her father. Doc. 31. Amy used $71,175.80 of this inheritance to pay off the remaining balance of the mortgage on the marital residence. Tr. 33-34. Ex. B. At the time of the divorce, the marital residence was valued at $253,000.00. Tr. 38. Ex. A. Amy also used portions of this inheritance to fund a joint investment account with Edward Jones. Tr. 98-101. Ex. B, N. Doc. 31. The funds in this joint investment account were subdivided into two different accounts: a stock account and an annuity contract account. Tr. 101. Amy testified that the stock account was initially funded with inheritance monies but that later contributions were made to this account with marital funds. Tr. 102. The annuity contract account, however, was entirely funded with inheritance monies, and no subsequent contributions were made to this annuity. Tr. 101. While this was a joint

-2-

investment account, Amy claimed that "if you're married, Ed Jones just automatically puts it in spousal name. Dan was never present. [Daniel] was never involved in the investments or anything like that." Tr. 105.

{¶3} Daniel filed for a divorce in 2014. Doc. 1. At the divorce proceeding on April 12, 2016, one of the primary issues before the trial court was whether certain assets that were purchased with the proceeds of Amy's inheritance should be classified as separate or marital property. Doc. 30. Amy asserted that she did not intend for the identified transactions to be gifts to Daniel and that these assets remained her separate property because they were traceable to her inheritance. Doc. 30. She further argued that Daniel—as the purported donee—had the burden of establishing that these transactions were gifts. Doc. 30. Daniel, on the other hand, argued that these transactions were gifts and that these proceeds from Amy's inheritance were, through these transactions, transmuted into marital property. Doc. 29. Daniel further argued that, under the family gift presumption, Amy—as the purported donor—had the burden of establishing that these transactions were not gifts and that she had not carried this burden of proof. Doc. 29.

{¶4} On May 9, 2016, the trial court determined that Daniel—as the purported donee—had the burden of establishing that the identified transactions were gifts and found that he had not carried this burden. Doc. 31. For this reason, the trial court determined that the equity in the marital residence that resulted from the mortgage payoff was Amy's separate property. Doc. 31. The trial court then

determined that the annuity contract account was Amy's separate property but found that the stock account was marital property to be divided equally between the parties. Doc. 31.

{¶5} On his first appeal, Daniel argued that the trial court failed to apply the family gift presumption in the process of classifying the contested assets. *Miller, supra*, at ¶ 11. Generally, the purported donee bears the burden of establishing that the donor intended for a transaction to be an inter vivos gift. *Kovacs v. Kovacs*, 6th Dist. Sandusky No. S-09-039, 2011-Ohio-154, ¶ 12. However, under the family gift presumption, if a transaction benefits a family member, the transaction is presumed to be a gift.[1] *Id*. Thus, when the family gift presumption is applicable, the purported donor will generally bear the burden of establishing that a transaction was not a gift. *Id*. Since Amy and Daniel were family members at the time of these transactions, Daniel argued that he—as the purported donee—should not have had the burden of proving these transactions were gifts. *Miller* at ¶ 11. Rather, he argued that Amy— as the purported donor—should have had the burden of establishing these transactions were not gifts. *See Kovacs* at ¶ 12.

{¶6} The family gift presumption has not generally been applied in the context of domestic relations proceedings. *See Creed v. President, etc., of Lancaster*

---

[1] In our prior opinion, we referred to this as the "marital gift presumption" because the Sixth District, in *Kovacs* applied the family gift presumption in the context of marital relationships. *Kovacs, supra*, at ¶ 12. However, in this opinion, we have opted to refer to this concept uniformly as the "family gift presumption."

*Bank,* 1 Ohio St. 1 (1852); *Maurer v. Maurer*, 2d Dist. Montgomery No. 10029, 1987 WL 7868, *3 (Mar. 13, 1987) (holding that the family gift presumption has traditionally been applied in cases "involve[ing] claims by creditors alleging fraudulent conveyances and not domestic relations matters."); *Davis v. Davis*, 5th Dist. Stark No. 2003CA00243, 2004-Ohio-820, ¶ 8. However, in 2004, the Eleventh District applied the family gift presumption in the context of a divorce proceeding in *Osborn v. Osborn*, 11th Dist. Trumbull No. 2003-T-0111, 2004-Ohio-6476, ¶ 33. The *Osborn* decision was somewhat novel in applying the family gift presumption to transactions between spouses that are alleged to be gifts in a divorce proceeding.[2] *Compare Helton v. Helton*, 114 Ohio App.3d 683, 683 N.E.2d 1157 (2d Dist.); *Neville v. Neville*, 3d Dist. Marion No. 9-08-37, 2009-Ohio-3817, ¶ 17; *Stotts v. Stotts*, 4th Dist. Athens No. 16CA14, 2017-Ohio-5738, ¶ 12; *Nethers v. Nethers*, 2018-Ohio-4085, --- N.E.3d ---, ¶ 16 (5th Dist.). The Sixth District, in *Kovacs*, followed the *Osborn* decision and applied the family gift presumption in a divorce proceeding. *Kovacs, supra*, at ¶ 12, citing *Osborn* at ¶ 33. Since that time, the Sixth District has not overturned or clearly contradicted *Kovacs* in a factually similar case. *See Soley v. Soley*, 2017-Ohio-2817, 82 N.E.3d 43 (6th Dist.).[3]

---

[2] Since the *Kovacs* decision, the Eleventh District has decided several cases that are factually similar to *Osborn*. *See Brady v. Brady*, 11th Dist. Portage No. 2007-P-0059, 2008-Ohio-1657, ¶ 27; *Siefert v. Seifert*, 2012-Ohio-3037, 973 N.E.2d 834, ¶ 10 (11th Dist.). In these cases, the Eleventh District clearly applied the traditional rule and expressly placed burden on the donee spouse to establish that the donor spouse intended a transaction to be a gift. *Brady, supra,* at ¶ 24; *Seifert, supra,* at ¶ 10.

[3] In *Soley*, the appellee owned real property that he transferred to the appellant via a quitclaim deed after his marriage. *Soley, supra*, at ¶ 2. The trial court found this remained appellee's separate property. *Id*. On appeal, appellant argued that a transfer via a quitclaim deed makes a transaction a gift per se. *Id*. at ¶ 23.

{¶7} As we are sitting by assignment, we followed the precedent of the Sixth District in *Kovacs*. Thus, we found Daniel's argument to have merit and ordered the trial court to apply the family gift presumption to the relevant transactions. *Id.* at ¶ 17. On remand, the trial court applied the family gift presumption to the equity in the marital residence in its judgment entry. Doc. 48. The trial court then determined that the mortgage payoff was a gift from Amy to Daniel and credited Daniel with $35,587.90. Doc. 48. The trial court, however, did not expressly analyze any other assets under the family gift presumption in its judgment entry. Doc. 48. Both Daniel and Amy appealed this decision. On appeal, Daniel raises the following assignment of error:

### Daniel's Assignment of Error

**Before ordering the ultimate distribution of property in this divorce case, the trial court erred by never determining, under the right legal standard, the threshold issue of whether certain disputed assets are 'marital' or 'separate' property.**

On cross-appeal, Amy raises the following assignment of error:

### Amy's Assignment of Error

**The trial court erred on remand in finding that the mortgage payoff constituted marital property when the funds used were separate property under R.C. 3105.171(A)(6)(a).**

---

The Sixth District rejected the appellant's argument but reversed the trial court's classification because the record showed that appellee transferred the property with the intent to avoid creditors. *Id.* at ¶ 23. In this decision, the Sixth District quoted a portion of *Kovacs* but did not mention the family gift presumption. *Id.* at ¶ 20. While the Sixth District addressed the appellant's arguments on appeal, it is not clear who had the burden of proving a gift in *Soley*. The primary issue was the legal significance of the quitclaim deed, not the question of which party had the burden of proof. In the absence of a case that clearly contradicted or overturned *Kovacs*, we, sitting by assignment, applied what is expressly stated in *Kovacs* to the facts of *Miller I. Miller, supra*, at ¶ 17.

*Daniel's Assignment of Error*

**{¶8}** Daniel argues the trial court did not apply the family gift presumption to all of the contested assets.

*Legal Standard*

**{¶9}** In dividing property between the parties to a divorce action, the trial court identifies what property is marital and what property is separate. R.C. 3105.171(B). The separate property is retained by the party who obtained the separate property regardless of whether the separate property was acquired before or during the marriage. R.C. 3105.171(D). The marital property is then to be divided equally between the parties unless such a division would be inequitable. R.C. 3105.171(C)(1). Separate property includes "an inheritance by one spouse by bequest, devise, or descent during the course of the marriage." R.C. 3105.171(A)(6)(a)(i). If separate property is commingled with marital property, the separate property does not become marital property unless "the separate property is not traceable." R.C. 3105.171(A)(6)(b).

**{¶10}** Parties can transmute separate property into marital property by means of an inter vivos gift, where, as here, there has been effected a reduction of the parties' joint obligation for their mortgage. See *Kovacs, supra,* at ¶ 12. "The essential elements of an inter vivos gift are: '(1) [the] intent of the donor to make an immediate gift, (2) delivery of the property to the donee, [and] (3) acceptance of the

gift by the donee.'" *Id.*, quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 694 N.E.2d 989 (4th Dist. 1997), fn. 2.

> **"The donee has the burden of showing by clear and convincing evidence that the donor made an inter vivos gift." Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proven. However, "[w]hen a transaction is made that benefits a family member, there is a presumption that the transaction was intended as a gift."**

(Citations omitted.)  *Kovacs* at ¶ 12, citing *Osborn, supra*, at ¶ 33; *Davis, supra, at* ¶ 8.  On appeal, "a trial court's classification of property as marital or separate is reviewed under a manifest weight standard."  *Miller v. Miller*, 6th Dist. Sandusky No. S-12-035, 2013-Ohio-5071, ¶ 22.

> **As such, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. In so doing, 'the court of appeals must always be mindful of the presumption in favor of the finder of fact.'**

(Citations omitted.)  *Gomer v. Gomer*, 2017-Ohio-989, 86 N.E.3d 920, ¶ 38 (6th Dist.).

*Legal Analysis*

{¶11} In addressing the appellant's argument, we find it necessary to clarify our prior ruling.  In his previous appeal, Daniel argued that the trial court failed to apply the proper legal standard in the process of dividing "the equity in the marital residence [and] other accounts."  *Miller,* 2017-Ohio-7646, ¶ 9.  The primary thrust

of Daniel's argument addressed the equity in the marital residence, but Daniel also alleged that the trial court failed to apply the family gift presumption to the annuity contract account that was funded with Amy's inheritance. In sustaining the first assignment of error in Daniel's prior appeal, we did not intend for the application of the family gift presumption to be limited to the equity in the marital residence. Rather, we intended for the family gift presumption to be applied to all of the assets that were contested in Section A of his first assignment of error: the equity in the marital residence and the "other accounts." [4] While the trial court, on remand, expressly applied the family gift presumption to the equity in the marital residence, the trial court did not reference any other accounts in its judgment entry. Doc. 48. Thus, we cannot conclusively determine from the judgment entry whether the trial court applied the family gift presumption to the annuity contract account. For this reason, we sustain Daniel's sole assignment of error. [5]

[4] The appellant, in his brief, does not specifically identify which accounts he believes were improperly classified as Amy's separate property. From the record, it appears that at least one account would be subject to the family gift presumption: the annuity contract account in the Edward Jones investment portfolio. This annuity contract was jointly owned and awarded to Amy as her separate property. Thus, the family gift presumption seems to be applicable to at least one account. We will, however, leave it to the trial court to find whether any additional accounts should be analyzed under the family gift presumption.

[5] In our prior opinion, we did not require the trial court to divide the contested assets between the parties. We only required the trial court to apply the family gift presumption where it was applicable. Thus, it is possible that the trial court did consider the disputed accounts under the family gift presumption but did not incorporate this analysis into its judgment entry because it determined that no modification of its prior order was necessary as to these assets. If this is the case, the trial court needs only to incorporate these additional findings into its judgment entry.

*Amy's Assignment of Error*

**{¶12}** Amy argues that the trial court erred in crediting Daniel with half the value of the mortgage payoff amount. She asserts that the trial court should have classified this amount as her separate property because the funds used to pay off the mortgage were traceable to her inheritance.

*Legal Standard*

**{¶13}** We reincorporate the standard set forth under Daniel's assignment of error.

*Legal Analysis*

**{¶14}** At the divorce proceeding, Amy submitted documentation that traced the funds she used to payoff the mortgage back to her inheritance. Ex. B. However, under the Sixth District's family gift presumption, the issue was not merely whether Amy could establish that these funds were traceable but also whether Amy could carry the burden of establishing that this transaction was not a gift to Daniel. *Miller,* 2017-Ohio-7646, ¶ 13-14. On remand, the trial court found that Amy had not carried this burden. Doc. 48.

**{¶15}** The evidence in the record shows that the trial court did not, in this matter, make a classification that was against the manifest weight of the evidence. At trial, Daniel testified that the marital residence was jointly owned and that the mortgage on this property was in both of their names. Tr. 14. Daniel also testified

that he did not ask Amy to pay off the mortgage. Tr. 34-35. Amy, on the other hand, testified that she paid off the mortgage because her "goal was always to be debt free * * *." Tr. 128. Daniel, in his final argument, responded by arguing that this was a jointly held debt and that this transaction was, therefore, undertaken to reduce his indebtedness also. Doc. 29. *See Kovacs, supra*, at ¶ 15 (holding "the evidence established that by paying off the mortgage on the * * * marital home, appellant eased the burden of a mortgage payment on both he and appellee.").

{¶16} On remand, the trial court followed our order to apply the family gift presumption to the equity resulting from the mortgage payoff and determined that Amy had, in 2012, intended this transaction to be a gift. Doc. 48. After reviewing the evidence in the record, we find that the trial court's classification was supported by competent, credible evidence. Further, we do not find evidence in the record that indicates that this determination is against the manifest weight of the evidence. For these reasons, Amy's sole of assignment of error is overruled.

*Conclusion*

{¶17} Having found error prejudicial to the appellant in the particulars assigned and argued in his sole assignment of error, the judgment of the trial court is reversed as to this issue. Having found no error prejudicial to the cross-appellant in the particulars assigned and argued, the judgment of the trial court is affirmed as

to this issue. This matter is remanded to the Sandusky County Court of Common Pleas for further proceedings in accordance with this opinion.

***Judgment Affirmed in Part,***
***Reversed in Part,***
***And Cause Remanded***

**SHAW and PRESTON, J.J., concur.**

**/hls**

Judges John R. Willamowski, Vernon L. Preston and Stephen R. Shaw, from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.