[Cite as *Gomer v. Gomer*, 2017-Ohio-989.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Robin L. Gomer

       Appellee

v.

David M. Gomer

       Appellant

Court of Appeals No. WD-15-072

Trial Court No. 2013DR0186

**<u>DECISION AND JUDGMENT</u>**

Decided: March 17, 2017

* * * * *

Erik G. Chappell and Amy M. Waskowiak, for appellee.

Theodore B. Tucker, III, for appellant.

* * * * *

**JENSEN, P.J.**

## I. Introduction

{¶ 1} This is an appeal from the decision of the Wood County Court of Common Pleas, Domestic Relations Division, in which the trial court granted appellee, Robin Gomer, a divorce from appellant, David Gomer. For the reasons that follow, we reverse the judgment of the trial court.

## A. Facts and Procedural Background

{¶ 2} The relevant facts are undisputed. Appellant and appellee married on May 31, 1986. They have no children. Two weeks prior to marriage, the parties entered into a written antenuptial agreement, in which appellant's assets were listed as a 1985 Ford Explorer pick-up and "any/all accounts receivable, purchase orders, hand tools, leasehold interest, any/all equipment and/or inventory together with good will of Dave's Amoco, Arlington Avenue." Notably, the antenuptial agreement was silent as to any money held by appellant on the date of its execution.

{¶ 3} Almost seven months after the wedding, appellant asked appellee to enter into a "Postnuptial Agreement" in order to ensure that the real property where Dave's Amoco was located (906 Woodsdale Avenue, Toledo, Ohio), which was purchased by appellant on November 20, 1986, would be considered pre-marital. According to the Postnuptial Agreement, appellant used $15,000 of his "separate" funds to purchase the property. Feeling that she had no choice but to sign the document, appellee executed the Postnuptial Agreement. At a hearing before the magistrate, appellant acknowledged that he possessed at least $15,000 in undisclosed disposable liquid funds at the time the parties signed the antenuptial agreement.

{¶ 4} On February 2, 1987, appellant formed Gomer Enterprises, Inc. The stated purpose for Gomer Enterprises, Inc. was to engage in an automotive repair business. The business operated at the Woodsdale Avenue property under the name of Dave's Auto Service. Throughout the course of the parties' 28-year marriage, appellee worked

2.

alongside appellant at Gomer Enterprises, Inc., managing the company's books and performing other support services.[1] Appellee did not receive a paycheck for her work. Consequently, appellee paid nothing into Social Security during the marriage. For this reason, appellee does not qualify for Social Security benefits. Appellant, on the other hand, is eligible for social security benefits. According to the evidence presented at the hearing, appellant will receive a monthly benefit of between $1,869 and $2,417. Appellee will be entitled to receive spousal social security benefits of $934, to be offset to some degree by any pension benefit she receives through the School Employee Retirement System of Ohio (SERS).

{¶ 5} In early August 2013, appellee entered the hospital due to a nervous breakdown allegedly brought about by appellant's abusive behavior. On September 13, 2013, appellee filed a complaint seeking a divorce from appellant and alleging incompatibility.

{¶ 6} Following pretrial discovery, the parties appeared for a final hearing before a magistrate. The two-day hearing was held on November 19, 2014, and January 21, 2015. Several issues were addressed at the hearing concerning the enforceability of the antenuptial agreement and Postnuptial Agreement, as well as the distribution of the marital estate. On April 7, 2015, the magistrate issued her decision in which she granted the parties a divorce, found the antenuptial agreement and Postnuptial Agreement to be

---

[1] The parties disputed the amount of time appellee spent working for appellant's business. According to appellee, she averaged about 20 hours per week working at Gomer Enterprises, Inc. Appellant testified that she only worked an "hour or two a week."

3.

invalid and unenforceable, ordered appellant to pay appellee $500 per month in spousal support for a period of 78 months, and divided the marital estate. The magistrate further ordered appellant to pay certain expenses including the mortgage on the marital residence located in Perrysburg, Wood County, Ohio, as well as appraisal expenses. Additionally, the magistrate ordered appellant to pay $14,000 toward appellee's attorney fees.

{¶ 7} Shortly after receiving notice of the magistrate's decision, both parties filed timely objections. Among other things, appellant objected to the magistrate's division of the marital estate, as well as her determination that the antenuptial agreement and Postnuptial Agreement were invalid and unenforceable. Appellee objected to the magistrate's alleged failure to consider certain marital bank accounts in dividing the marital estate. Appellee also took issue with the magistrate's determination of spousal support, arguing that an amount of $1,200 for a period of 108 months would be more equitable. Finally, appellee objected to the magistrate ordering appellant to pay $14,000 toward her attorney fees, where she asserted that the total amount of her attorney fees were $39,930.32.

{¶ 8} Following briefing on the objections, the court issued its order adopting the magistrate's decision with certain modifications that are not relevant to our disposition of this appeal. On October 30, 2015, the court issued its final judgment entry of divorce. Appellant's timely appeal followed.

4.

## B. Assignments of Error

{¶ 9} On appeal, appellant raises the following assignments of error for our review:

Assignment of Error Number One: The court erred and abused its discretion in determining that the antenuptial/prenuptial agreement was invalid and unenforceable.

Assignment of Error Number Two: The court erred and abused its discretion in ordering the defendant/appellant to pay the balance owed to the appraiser from the 1611 Monroe Street Account (…7636).

Assignment of Error Number Three: The court erred and abused its discretion in its determination that Gomer Enterprises, Inc., including all assets thereof, to be a marital asset in its entirety.

Assignment of Error Number Four: The court erred and abused its discretion in its determination of the equitable date of valuation thereby improperly dividing the marital assets.

Assignment of Error Number Five: The court erred and abused its discretion in its determination that the real property at 906/912 Woodsdale is marital property and not defendant/appellant's separate property and its determination of the value of such property.

Assignment of Error Number Six: The court erred and abused its discretion in its determination of the equal division of the 1611 Monroe

Street account without adjustment in favor of defendant/appellant for the Uplander van purchase by plaintiff/appellee from such account.

Assignment of Error Number Seven: The court erred and abused its discretion in excluding plaintiff/appellee's SERS account from the division of retirement accounts; awarding plaintiff/appellee her SERS account in its entirety; and awarding defendant/appellant's Schwab IRA account to plaintiff/appellee "in consideration of defendant/appellant's quarterly social security benefits."

Assignment of Error Number Eight: The court erred and abused its discretion in awarding the plaintiff/appellee partial reimbursement of attorney fees in the sum of $14,000.

## II. Analysis

### A. Validity of the Antenuptial Agreement

{¶ 10} In his first assignment of error, appellant argues that the trial court erred in determining that the antenuptial agreement was invalid and unenforceable.

{¶ 11} "An antenuptial agreement is a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage whereby the property rights and economic interests of either the prospective wife or husband, or both, are determined and set forth in such instrument." *Gross v. Gross*, 11 Ohio St.3d 99, 102, 464 N.E.2d 500 (1984). The Supreme Court of Ohio has recognized that

6.

[s]uch agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce. *Id.* at paragraph two of the syllabus.

{¶ 12} The Ohio Supreme Court explained in *Gross* that the requirement of "full disclosure" is satisfied "either by the exhibiting of the attachment to the antenuptial agreement of a listing of the assets of the parties to the agreement, or alternatively a showing that there had been a full disclosure by other means." *Gross* at 105. "Courts of appeals have consistently looked to the totality of the circumstances to determine whether the required knowledge of assets is present." *Vanderbilt v. Vanderbilt*, 9th Dist. Medina Nos. 11CA0103-M, 11CA0104-M, 2013-Ohio-1222, ¶ 10, citing *Grimm v. Grimm*, 12th Dist. Butler No. CA2002-04-089, 2003-Ohio-80, ¶ 8-9.

{¶ 13} According to his testimony, appellant raised the issue of an antenuptial agreement with appellee approximately one year prior to the wedding. Appellant testified that he desired an antenuptial agreement because he wished to protect his preexisting auto repair/gas station business. He went on to indicate that he would not marry appellee without an antenuptial agreement. Appellant confirmed that the antenuptial agreement was prepared by his attorney, and that appellee was not represented by independent counsel at the time. The agreement was signed

7.

approximately two weeks prior to the wedding. Appellant disclosed the extent of his assets as (1) a 1985 Ford Explorer pickup truck, and (2) "any/all accounts receivable, purchase orders, hand tools, leasehold interest, any/all equipment and/or inventory together with good will of Dave's Amoco, Arlington Avenue, Toledo, Ohio." On cross-examination, appellant acknowledged that he did not disclose any of his personal bank accounts or investment accounts. He stated that he had between $40,000 and $45,000 in his bank accounts at the time the antenuptial agreement was executed.

{¶ 14} Based on our review of the entire record, including the foregoing testimony, we find that the trial court did not err in holding that the antenuptial agreement was invalid and unenforceable. As indicated above, appellant acknowledged his failure to disclose all of his assets prior to executing the antenuptial agreement. Although appellant attached an exhibit outlining his assets to the antenuptial agreement, he failed to disclose a substantial amount of cash that was held in personal accounts. Further, appellant failed to make the alternate showing that there had been a full disclosure by means other than the exhibit attached to the agreement. Therefore, we agree with the trial court that the antenuptial agreement was invalid and unenforceable.

{¶ 15} Accordingly, appellant's first assignment of error is not well-taken.

### B. Payment of Appraisal Expenses

{¶ 16} In his second assignment of error, appellant argues that the trial court abused its discretion in ordering him to pay the balance owed to the appraiser of the parties' warehouse located at 1611 Monroe Street, Toledo, Ohio.

8.

{¶ 17} "[T]he allocation of expenses * * * for an appraiser is a matter squarely within the trial court's discretion." *Balaun v. Balaun*, 9th Dist. Summit No. 12812, 1987 Ohio App. LEXIS 6294, *7 (Apr. 1, 1987). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 18} In its final judgment entry of divorce, the trial court ordered appellant to pay the balance of the money owed to the appraiser of the 1611 Monroe Street property, totaling $517.50. Notably, the trial court went on to state: "If [appellant] provides [appellee] with proof of payment of these expenditures, [appellant] may reduce the $45,877.35 payable above [representing appellee's one-half interest in the parties' rental properties and bank accounts] by half of these expenditures." Thus, appellant was effectively ordered to pay half of the appraiser's expenses.

{¶ 19} In his appellate brief, appellant argues that he should not be responsible for the appraiser's expenses since said expenses were the result of appellee's desire to call the appraiser as a witness at trial. Appellee responds by asserting that she was required to call the appraiser to testify because appellant refused to stipulate to the introduction of the appraisals.

{¶ 20} Having considered the parties' competing arguments in light of the record before us, we hold that the trial court did not abuse its discretion in allocating the appraisal expenses. Accordingly, appellant's second assignment of error is not well-taken.

9.

## C. Division of Marital Property

**{¶ 21}** In his third, fourth, fifth, sixth, and seventh assignments of error, appellant challenges the trial court's division of marital property.

**{¶ 22}** It is well-established that an appellate court may not reverse a trial court's property allocation decision absent a showing of an abuse of discretion. *Cherry v. Cherry*, 66 Ohio St .2d 348, 421 N.E.2d 1293 (1981). In determining whether the trial court abused its discretion, a reviewing court cannot examine the valuation and division of a particular marital asset or liability in isolation. *Briganti v. Briganti*, 9 Ohio St.3d 220, 459 N.E.2d 896 (1984). Instead, the reviewing court must view the property division in its entirety. *Id.*

**{¶ 23}** In a divorce proceeding, a trial court shall divide the marital property between the spouses in accordance with the provisions in R.C. 3105.171. According to R.C. 3105.171(C)(1), the trial court's division of marital property shall be equal. However, if an equal division of marital property would be inequitable, the court shall instead divide it between the spouses in the manner the court determines equitable. R.C. 3105.171(C)(1).

### i. Gomer Enterprises, Inc.

**{¶ 24}** In his third assignment of error, appellant argues that the trial court abused its discretion in classifying Gomer Enterprises, Inc. as a marital asset.

**{¶ 25}** In its order adopting the magistrate's decision, the trial court found that the business was initially separate property since appellant operated Dave's Amoco (the

10.

predecessor to Gomer Enterprises, Inc.) prior to the marriage. However, the trial court went on to find that appellant failed to trace the separate property throughout the duration of the marriage.

{¶ 26} At the outset, we note that the value of Gomer Enterprises, Inc. is largely limited to the value of the tools and equipment of the business, as well as the bank accounts associated with the business. Appellant's argument in this assignment of error relates to the trial court's treatment of the tools and equipment of Gomer Enterprises, Inc.

{¶ 27} According to appellee's exhibit No. 66, the value of the tools and equipment of the business was $16,968.50. Of this amount, $7,340 represents the value of the tools and equipment that were acquired by appellant prior to the marriage, and $9,628.50 represents the value of the tools and equipment that were acquired after the marriage. Given this division, appellant argues that the trial court abused its discretion when it treated the entire value of the tools and equipment as marital property.

{¶ 28} Concerning appellee's exhibit No. 66, the trial court found that the appraiser's classification of the tools and equipment into pre-marital and post-marital categories lacked credibility. The court stated that "there is nothing in the appraisal report, and there was no testimony before the magistrate as to how the appraiser was able to divide the property into the two classifications. [Appellant's] memory regarding equipment purchases is hazy." The court went on to cite the appraiser's pre-marital

11.

classification of a $1,500 "SnapOn Versus Scan Tool (2010 Update)" as support for its finding that the exhibit lacked credibility.[2]

{¶ 29} Having reviewed the record, we find no basis to disturb the trial court's credibility determination relating to exhibit No. 66. Indeed, the appraiser's rationale behind classifying the SnapOn Tool as pre-marital is mysterious given the fact that it was seemingly acquired in 2010. Further, the lack of testimony pertaining to the appraiser's rationale made it impossible for the court to ascertain the reliability of the exhibit and, by extension, the traceability of the pre-marital tools and equipment. It is well-established that a party requesting that an asset be classified as separate property bears the burden of tracing that asset to his or her separate property. *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168, ¶ 20 (10th Dist). Given appellant's failure to trace the tools and equipment that he acquired prior to the marriage, we find that the trial court did not abuse its discretion in classifying them as marital.

{¶ 30} Accordingly, appellant's third assignment of error is not well-taken.

---

[2] Notwithstanding its conclusion that exhibit No. 66 lacked credibility, the court relied upon the appraiser's overall valuation of the tools and equipment of the business, stating: "The court will also adopt the magistrate's finding that the value of the equipment owned by Gomer Enterprises, Inc., is $18,968.50." Upon review of the magistrate's decision and exhibit No. 66, it is clear that the trial court made a clerical error in its decision adopting the magistrate's decision by finding that the total value of the tools and equipment was $18,968.50 instead of $16,968.50, which was the actual value set forth in the appraiser's report and referenced in the magistrate's decision. However, this mistake was corrected in the trial court's final judgment entry of divorce, which utilizes the $16,968.50 figure in its division of the marital property. Thus, the trial court's prior error was harmless.

12.

### ii. Determination of the Date of Valuation

{¶ 31} In appellant's fourth assignment of error, he argues that the trial court abused its discretion in its determination of the equitable date of valuation of the marital estate.

{¶ 32} In determining the end date of a marriage, R.C. 3105.171(A) provides:

(2) "During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶ 33} Thus, a trial court should only apply a de facto date of termination for the marriage when the court finds it would be inequitable to use the date of final hearing. *Berish v. Berish*, 69 Ohio St.2d 318, 320, 432 N.E.2d 183 (1982). The decision to apply a de facto end date of a marriage is reviewed for an abuse of discretion. *Id.* at 321. "In assessing which date to use for asset valuation, trial courts must engage in a totality of the

circumstances analysis considering factors such as whether there were attempts at reconciliation, maintenance of separate residences, maintenance of separate financial accounts, and subsequent cohabitation of the parties with new partners following the separation." *Liss v. Liss*, 6th Dist. Wood No. WD-08-029, 2008-Ohio-5634, ¶ 16.

{¶ 34} In the present case, appellant emphasizes his attempts at reconciliation in support of his position that the date used to value the marital assets should have been the date of the final hearing (i.e., November 2015). The trial court considered this factor, noting that "[appellant] sent [appellee] several letters attempting to reconcile. * * * At the same time, he was consulting with counsel and did put all of the bank accounts solely in his name."

{¶ 35} The court went on to consider several other factors, and concluded that the de facto date of termination for the marriage should be the date appellee entered the hospital and told appellant she wanted a divorce (i.e., August 2013). In arriving at its decision, the trial court specifically noted that appellee and appellant have maintained separate residences since appellee was discharged from the hospital. The court also stressed the fact that appellant closed the parties' joint bank accounts and transferred the funds into cash or into accounts under his control following appellee's filing for divorce. Appellant does not contest the validity of these findings.

{¶ 36} Given the fact that the parties in this case have been living separately since appellee was released from the hospital in August 2013, both in a physical and financial sense, the trial court's determination that August 2013 was the de facto date of

14.

termination of the marriage did not constitute an abuse of discretion. Accordingly, appellant's fourth assignment of error is not well-taken.

### iii. 906/912 Woodsdale

{¶ 37} In his fifth assignment of error, appellant contends that the trial court erred in finding that the real property at 906/912 Woodsdale was marital property and not appellant's separate property.

{¶ 38} "On appeal, a trial court's classification of property as marital or separate is reviewed under a manifest weight standard." *Miller v. Miller*, 6th Dist. Sandusky No. S-12-035, 2013-Ohio-5071, ¶ 22. The standard of review for manifest weight is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. As such, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. In so doing, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 39} Here, appellant contends that the trial court improperly classified the property at 906/912 Woodsdale as marital property rather than his separate property. Notably, the Woodsdale property was purchased after the parties were married. Admittedly, the property was partially paid for by the use of funds appellant brought into the marriage. However, appellant has failed to trace those funds. Consequently, the

15.

Woodsdale property was properly classified as marital property. *See* R.C. 3105.171(A)(3)(a)(i) (defining marital property to include "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage").

{¶ 40} Nonetheless, appellant argues that the terms of the antenuptial agreement demand a finding that this property is his separate property. However, we have already found that the trial court properly found that the antenuptial agreement was invalid and unenforceable due to appellant's failure to fully disclose his assets. Consequently, we find appellant's reliance on the antenuptial agreement misplaced.

{¶ 41} Appellant also relies on the Postnuptial Agreement to support his contention that the Woodsdale property was his separate property. R.C. 3103.06 provides that "[a] husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation." "R.C. 3103.06 prohibits post-nuptial contracts, unaccompanied by a separation agreement, that alter the parties' legal rights." *King v. King*, 4th Dist. Adams No. 99 CA 680, 2000 Ohio App. LEXIS 1190, *13 (Mar. 20, 2000).

{¶ 42} In the present case, the Postnuptial Agreement, which alters the legal relations of the parties by classifying marital property as separate property, was executed during the first year of the parties' 28-year marriage. As such, the Postnuptial Agreement is not merely an agreement to immediately separate as required under R.C. 3103.06.

16.

Therefore, the Postnuptial Agreement is invalid and unenforceable, and appellant's reliance thereon is unavailing.

{¶ 43} Next, appellant challenges the trial court's determination of the value of the Woodsdale property. Specifically, he argues that the appraised value of the property ($70,000) was unreliable because the appraiser failed to account for any potential environmental issues at the site that would diminish the property's value.

{¶ 44} At the final hearing, appellee called Hubert Winegardner to the stand. Winegardner was the individual responsible for appraising the Woodsdale property, which was previously used as a gas station. According to the appraisal report, the estimated value of the Woodsdale property is $70,000. On page one of the report, Winegardner was careful to note that the estimation of the value of the property "was completed under the hypothetical condition that no [environmental] contamination exists, as the cost for remediation [has] not been estimated or provided to the appraiser." During his testimony, Winegardner acknowledged that the estimation of the property's value did not take any potential environmental issues into account. When pressed on this issue, Winegardner admitted that the value of the property would be reduced if the property were found to be in need of environmental remediation.

{¶ 45} For his part, appellant testified that the estimated cost to remediate the environmental issues at the Woodsdale site was $44,000. However, the record also reveals that the environmental issues that were previously present on the property were remediated in 1992 when the underground fuel tanks were removed from the property.

17.

Further, appellant failed to introduce any evidence on environmental contamination on the property that would make the property unmarketable or diminish its value. Thus, we find that the trial court's reliance on the appraised value of the Woodsdale property was not against the manifest weight of the evidence.

{¶ 46} Accordingly, appellant's fifth assignment of error is not well-taken.

### iv. 1611 Monroe Street Account

{¶ 47} In his sixth assignment of error, appellant argues that the trial court erred in dividing the bank account tied to the parties' 1611 Monroe Street property without making an adjustment in his favor for appellee's purchase of a 2007 Chevrolet Uplander van from the account.

{¶ 48} In its order adopting the magistrate's decision, the trial court found that appellee improperly used funds from the 1611 Monroe Street account to purchase a Chevrolet Uplander van. However, the court found that no adjustment in appellee's share in the account was necessary since the funds in the account are marital and appellee purchased the van prior to entering the hospital. Thus, the court determined that the 1611 Monroe Street account would be divided equally between the parties.

{¶ 49} Appellant does not dispute the trial court's classification of the funds contained in the 1611 Monroe Street account as marital. Further, appellant does not contest the trial court's finding that appellee purchased the van prior to the initiation of divorce proceedings. Rather, he argues that he should receive a greater share of those

18.

funds because appellee was awarded the Uplander van. We find no merit to appellant's argument.

{¶ 50} The record reveals that the fair market value of the van is $4,989. Notably, the parties also owned a 2003 Chevrolet Silverado pickup truck with a fair market value of $4,792, which was awarded to appellant. Given that the vehicles are roughly equivalent in value, we find that no adjustment to the parties' share of the 1611 Monroe Street account was warranted.

{¶ 51} Accordingly, appellant's sixth assignment of error is not well-taken.

### v. Retirement Accounts

{¶ 52} In his seventh assignment of error, appellant asserts that the trial court abused its discretion in its division of the parties' various retirement accounts.

{¶ 53} The retirement accounts were summarized by the trial court as follows:

a.  Wife

  SERS            $7,210.93

  Schwab Roth IRA  $63,095.05

  Schwab Roth     $8,887.00

b.  Husband

  Schwab IRA      $52,808.23

  Schwab SEP IRA   $103,550.07

  Millennium Trust  $26,039.11

19.

In dividing the foregoing accounts, the court awarded appellee her SERS retirement account "free and clear of any interest of [appellant]." Additionally, the court adopted the magistrate's decision to award appellant's Schwab IRA account to appellee "[i]n consideration of [appellant's] quarterly Social Security benefits." The court directed that the remaining retirement accounts would be divided equally between the parties.

{¶ 54} Appellant contends that the trial court erred in awarding his Schwab IRA account to appellee in consideration of his social security benefits. Appellant asserts that the trial court was not permitted to take his social security benefits into consideration when dividing his Schwab IRA account. We agree.

{¶ 55} Under R.C. 3105.171(F)(9), a trial court engaged in the division of marital property may consider "[a]ny retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension." Here, the trial court clearly relied upon appellant's social security benefits to justify its award of appellant's Schwab IRA, a private retirement plan, to appellee. In its entry adopting the magistrate's decision, the court stated:

> As [appellant's] social security benefit cannot be divided, the magistrate decided to have [appellee] keep her entire SERS account and to require [appellant] to transfer his Schwab IRA of $52,808.23 to [appellee] in its entirety.
>
> * * *

20.

David did not want [appellee] to work outside the house. [Appellee] did perform bookkeeping services for the parties' various enterprises (about 20 hours per week) without compensation. She did not have an opportunity to build up retirement benefits through the workplace. The present value half of [appellant's] expected social security payments is a value substantially larger than half of the SERS account and half of [appellant's] Schwab IRA. The magistrate's decision to allow [appellee] to keep her SERS account in its entirety and to transfer to [appellee] all of [appellant's] Schwab IRA account is a fair and equitable distribution of the parties' pension and retirement benefits.

{¶ 56} Because R.C. 3105.171(F)(9) only permits the court to consider appellant's social security benefits in its division of appellee's public pension account (i.e., the SERS account), we find that the court abused its discretion in relying upon such benefits to justify its award of appellant's Schwab IRA to appellee. Thus, we must remand this matter to the trial court to reconsider its equitable division of marital property under R.C. 3105.171(B).

{¶ 57} Accordingly, appellant's seventh assignment of error is well-taken.

### D. Attorney Fees

{¶ 58} In his eighth assignment of error, appellant argues that the trial court erred in awarding $14,000 to appellee as a partial reimbursement of her attorney fees. Having concluded that we must remand this matter to the trial court for a new division of the

21.

marital property, we find appellant's argument premature. Indeed, the trial court may reconsider whether an award of attorney fees would be equitable in this case after issuing its new division and distribution of marital property. *Epperson v. Epperson*, 6th Dist. Wood No. WD-14-054, 2015-Ohio-2443, ¶ 84, citing *Raymond v. Raymond*, 10th Dist. Franklin No. 11AP-363, 2011-Ohio-6173, ¶ 26. Therefore, we find appellant's eighth assignment of error moot.

## III. Conclusion

**{¶ 59}** In light of the foregoing, we reverse the trial court's division of marital property and remand this matter to the trial court with instructions to divide the marital property in a manner consistent with this decision. On remand, the trial court must also reconsider its spousal support award, R.C. 3105.171(C)(3), and its award of attorney's fees. *Id.* Pursuant to App.R. 24, costs of this appeal are to be divided equally between the parties.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

22.

Mark L. Pietrykowski, J.          _____
                                                    JUDGE

Thomas J. Osowik, J.

James D. Jensen, P.J.             _____
CONCUR.                                              JUDGE

                                  _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.