[Cite as *Miller v. Miller*, 2017-Ohio-7646.]

# IN THE COURT OF APPEALS OF OHIO
## SIXTH APPELLATE DISTRICT
## SANDUSKY COUNTY

DANIEL A. MILLER,                                   CASE NO. S-16-27

   PLAINTIFF-APPELLANT,

  v.

AMY M. MILLER,                                      O P I N I O N

   DEFENDANT-APPELLEE.


Appeal from Sandusky County Common Pleas Court
Domestic Relations Division
Trial Court No. 14DR1122

Judgment Affirmed in Part, Reversed in Part,
Cause Remanded

Date of Decision:  September 15, 2017


APPEARANCES:

   *Andrew R. Mayle* for Appellant

   *Lisa M. Snyder* for Appellee

**WILLAMOWSKI, J.**

{**¶1**} In this case, Plaintiff-appellant Daniel A. Miller ("Daniel") appeals the judgment of the Court of Common Pleas of Sandusky County, challenging (1) several aspects of the trial court's distribution of property, (2) the award of attorney's fees to the defendant-appellee, Amy M. Miller ("Amy"), and (3) the award of spousal support. For the reasons set forth below, the judgment of the lower court is affirmed in part and reversed in part.

*Facts and Procedural History*

{**¶2**} Daniel and Amy were married on May 10, 1986. Doc. 1. Three children were born as issue of this marriage. Tr. 72. All three of these children are now emancipated. Tr. 72. Shortly after their marriage, Daniel began working at the concrete company owned by his father. Tr. 12. In 1990, Daniel's father transferred ownership of this concrete company to Daniel, who continued to own and operate the company for the duration of this marriage. Tr. 12. The concrete business provided the primary source of income for the family, though Daniel, in 2000, began a second business that provided plowing and salting services. For periods of time during the course of their marriage, Amy held various part-time jobs while also serving as the primary caregiver for their children. Tr. 85-86. She also participated in the operation of the concrete business, performing various administrative tasks. Tr. 21, 86.

**{¶3}** In 1998, the Millers began to build a house in Sandusky County that was to become the marital residence. Tr. 15. The Millers began living in this home in 1999. Tr. 19. The concrete business was operated out of another building on this property. In 2012, upon the passing of her father, Amy inherited property worth approximately $276,585.00. Doc. 31. Of this total, Amy put $71,175.80 toward paying off the remaining balance on the mortgage on the marital residence. *Id.* Amy also used portions of her inheritance to pay off a vehicle, buy some equipment for the concrete business, and fund several investment accounts. Tr. 35-36, 87, 98-101. Doc. 31.

**{¶4}** In February 2014, Daniel changed the P.O. box to which checks for the concrete business were sent, cutting Amy off from the family's primary source of income. Tr. 96. In March 2014, Daniel started operating the business without Amy, which left her without a job. Tr. 106. By this point, he realized that his marriage was not going to survive. Tr. 29. Consequently, he went to the bank where Daniel and Amy had a joint bank account to withdraw funds for his independent support. Tr. 28. Thinking this bank account had roughly $50,000 in it, he requested a cashier's check for $25,000. Tr. 29. By the time he attempted to cash this check, however, he was not able to use it because Amy had, by this point, removed the funds from the joint bank account and placed them in a different account. Tr. 29. He found out later that the bank account had contained $99,000. Tr. 30. He did not

have access to these funds during the course of this divorce proceeding as these monies were under the sole control of Amy. Tr. 29-30.

{¶5} At this time, Daniel took exclusive control over the accounts associated with the concrete business and was receiving all of the checks from the concrete business at his P.O. box. Tr. 81. Amy claimed at trial that Daniel had $94,000 in accounts receivables from the concrete business from a six-month period between January and June of 2014. Tr. 139. At trial, Daniel testified that he had less income than Amy had claimed and that he had to live off of a credit card initially during his separation. Tr. 146. Amy and Daniel separated on June 30, 2014. Doc. 31. On December 22, 2014, Daniel filed for a divorce in Sandusky County, Ohio. *Id*. On April 8, 2015, the trial court issued a temporary order that reads, in its relevant part, as follows:

> **The parties shall each provide, through counsel, documentation verifying any and all account balances and expenditures made for the benefit of the family for further negotiation of a settlement for the termination of the marriage. In the meantime, the Defendant shall be responsible for and pay the household expenses from the funds secured from the parties' previous joint checking account on deposit in Defendant's name at the Fremont Federal Credit Union. Defendant shall provide a full accounting of all expenditures from said funds as part of continuing negotiation.**

Doc. 14. Amy testified that she used funds from the joint bank account that had contained $99,000 to support herself in between February 2014 and the date of the trial in April 2016. Tr. 137. By the time of the trial, roughly $2,500 was left of the

$99,000. *Id.* At trial, Amy testified that she was, at that point, living off of the inheritance money she received from her father. *Id.*

{¶6} This case was heard by the trial court on April 12, 2016. *Id.* Prior to this hearing, Amy and Daniel had determined through mediation the values and division of their personal property, the businesses, and their vehicles. *Id.* One of the primary issues before the court was the identification of the separate property inherited by Amy. *Id.* In particular, this implicated the marital residence since proceeds from Amy's inheritance were applied to the mortgage debt on this property, raising the issue of whether this constituted a gift to Daniel from Amy. During mediation, the marital residence had been assigned a value of $253,000. *Id.*

{¶7} At trial, Amy requested an award of spousal support and an award of attorney's fees. Tr. 124-125. Regarding the attorney's fees, Amy submitted a nine-page, itemized invoice that documented the fees Amy incurred in retaining an attorney for the divorce proceeding. Tr. 124-126. Ex. R. The invoice listed the date of each task, the time spent on each task, and the amount billed for each task. Ex. R. Altogether, Amy's attorney's fees amounted to $11,670.00. *Id.* On cross examination, Amy stated that she was not sure precisely how much of these fees had already been paid by her at the time of trial. Tr. 139-140. Amy also stated that the portion of the attorney's fees that had been paid were paid with funds that had been withdrawn from a joint bank account, which contained roughly $99,000.00, prior to the commencement of this divorce proceeding. *Id.*

**{¶8}** On May 9, 2016, the trial court entered its decision. Doc. 31. In the judgment entry, the trial court concluded that Amy's inheritance monies were separate property and were not a gift to Daniel because Amy was able to trace the inheritance money into their present form and Daniel was not able to carry the burden of proving, by clear and convincing evidence, that Amy intended to gift these monies to him in the process of spending these funds in transactions that would benefit both of them. *Id.* For this reason, Daniel was not given any credit for the sum of money that Amy used to pay off the mortgage. *Id.* The court also determined that the $94,000 in accounts receivable that Daniel had and the $99,000 that Amy had spent supporting herself out of the joint bank account essentially offset each other and were "a wash." *Id.* The court also awarded Amy $5,000 in attorney's fees and spousal support of $750.00 per month for seven years. *Id.*

**{¶9}** On appeal, Daniel raises three assignments of error:

**First Assignment of Error**

**The trial court purported to equally distribute the parties' marital property, but (a) failed to give appellant any credit for the equity in the marital residence or other accounts, (b) failed to apply the proper legal standard for determining whether property is separate or marital, (c) failed to give appellant credit for a large sum of marital cash that appellee depleted unilaterally before the final divorce decree, and (d) improperly equated cash-in-hand with pre-tax receivables. These failures caused an erroneous—and enormously unequal—distribution of marital property.**

**Second Assignment of Error**

**The trial court erroneously awarded Ms. Miller attorney fees even though the fees—which were not proven to be reasonable or necessary—were already paid out of marital property.**

**Third Assignment of Error**

**Because of the trial errors addressed in the first two assignments of error, the award of spousal support must be reversed since any award of spousal support hinges upon the propriety of other awards.**

We will consider these assignments in the order in which they were presented in the appellant's brief.

*First Assignment of Error*

{¶10} In his first assignment of error, Daniel challenges the distribution of marital property as ordered by the trial court on the grounds that the division was inequitable. He alleges and lists four distinct errors in the text of his first assignment of error, but the subject matter of these four errors fits into two general categories: the trial court's (1) division of the equity in the marital residence and (2) treatment of $99,000 in marital cash and $94,000 in accounts receivable. Each of these two general categories contain two of the four errors contained in the text of the first assignment of error. We will first consider the two alleged errors that relate to the trial court's division of the equity in the marital residence. We will then consider the two alleged errors related to the trial court's treatment of the $99,000 in marital cash and the $94,000 in accounts receivable.

The Marital Residence

**{¶11}** Concerning the marital residence, Amy inherited a sum of money from her father and used some of the proceeds of this inheritance to pay off the mortgage on the marital residence. The first issue under this assignment of error is whether this was a gift from Amy to Daniel. Daniel argues that the trial court incorrectly determined that this was separate property simply because it was traceable to the inheritance money. Daniel further argues that the trial court incorrectly placed the burden on him to establish that this transaction was a gift when the trial court should have applied the marital gift presumption and, in so doing, placed the burden of proof on Amy to establish that this was not a gift. In its judgment entry, the trial court concluded that Daniel did not carry the burden of proving that this transaction was a gift, making the money used to pay off the mortgage on the marital residence separate property. This conclusion leads to the second issue, which is that Daniel was not given a credit for any of the equity in the marital residence. On the basis of these arguments, Daniel requests that this Court reverse and remand this case to the trial court to reconsider these issues.

Legal Standard

**{¶12}** In dividing property between the parties to a divorce action, the trial court identifies what property is marital and what property is separate. R.C. 3105.171(B). The separate property is retained by the party who obtained the separate property regardless of whether the separate property was acquired before

or during the marriage. R.C. 3105.171(D). The marital property is then to be divided equally between the parties unless such a division would be inequitable. R.C. 3105.171(C)(1). Separate property includes "an inheritance by one spouse by bequest, devise, or descent during the course of the marriage." 3105.171(A)(6)(a)(i). If separate property is commingled with marital property, the separate property does not become marital property unless "the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶13} However, "[i]t is well-settled that parties can transmute separate property into marital property by means of an inter vivos gift." *Kovacs v. Kovacs*, 6th Dist. Sandusky No. S-09-039, 2011-Ohio-154, ¶ 12, citing *Helton v. Helton*, 114 Ohio App.3d 683, 686, 683 N.E.2d 1157 (2d Dist.1996). "Generally, conversion occurs when a donor spouse makes an inter vivos gift of the property to the donee spouse." *Soley v. Soley*, 2017-Ohio-2817, --- N.E.3d ---, ¶ 19, citing *Helton* at 685. "The essential elements of an inter vivos gift are: '(1) [the] intent of the donor to make an immediate gift, (2) delivery of the property to the donee, [and] (3) acceptance of the gift by the donee.'" *Soley* at ¶ 20, quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 694 N.E.2d 989 (4th Dist.1997), fn. 2, citing *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 4 N.E.2d 917 (1936).

> **"The donee has the burden of showing by clear and convincing evidence that the donor made an inter vivos gift." Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proven. However, "[w]hen a transaction is made that benefits a**

**family member, there is a presumption that the transaction was intended as a gift."**

(Citations omitted.) *Kovacs* at ¶ 12. *See Osborn v. Osborn*, 11th Dist. Trumbull No. 2003-T-0111, 2004-Ohio-6476, ¶ 33, citing *Davis v. Davis*, 5th Dist. Stark No. 2003CA00243, 2004-Ohio-820, ¶ 8; *Williams v. Williams*, 3d Dist. Seneca No. 13-12-17, 2012-Ohio-6116, ¶ 16.

{¶14} Generally, "a trial court's classification of property as marital or separate is reviewed under a manifest weight standard." *Miller v. Miller*, 6th Dist. Sandusky No. S-12-035, 2013-Ohio-5071, ¶ 22. "[H]owever, where the trial court has misstated the law or applied the incorrect law, * * * our review is de novo." *Shaffer v. Ohio Health Corp.*, 10th Dist. Franklin No. 03AP-102, 2004-Ohio-63, ¶ 6. *See State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 16 (6th Dist.). In these situations, the appellate court is faced with a question of law and does not, therefore, need to give deference to the determination of the trial court. *State v. Today's Bookstore*, 86 Ohio App.3d 810, 823, 621 Ohio App.3d 1283, 1292 (2d Dist.1993).

Legal Analysis

{¶15} In this case, Amy inherited $276,585.00 from her father and used $71,175.80 of this total to pay off the mortgage on the Millers' marital residence. Doc. 31. The trial court concluded that the portion of Amy's inheritance that was used to pay off the marital residence should be categorized as separate property for

two related reasons.  Doc. 31.  First, the trial court determined that Daniel did not carry the burden of establishing that the funds used to pay off the mortgage were a gift from Amy to Daniel, making the issue of traceability dispositive in determining whether this property should be classed as marital or separate.  *Id.*  Second, the trial court determined that Amy was able to establish, by a preponderance of the evidence, that the funds used to pay off the mortgage were traceable to the money she inherited from her father.  *Id.*

{¶16} In making this determination, however, the trial court failed to apply the marital gift presumption.  *Kovacs* at ¶ 12.  While the burden is typically on the donee to establish that the donor intended to give a gift to the donee, a different rule applies where the transaction is one that benefits a family member.  *Id.* at ¶ 12-13.  In situations where a family member is benefitted by a transaction, a gift is presumed to have been intended through the transaction.  When the marital gift presumption is applicable, the burden is on the donor to establish that the transaction was not intended as a gift.  In this case, a transaction occurred: Amy paid off the marital residence with her inheritance money.   This transaction benefited a family member—Daniel.  Thus, the marital gift presumption applies, and the trial court should have placed the burden of proving that this transaction was not a gift on Amy instead of placing the burden of proving that this transaction was a gift on Daniel.  For this reason, the appellant's first assignment of error, as to the argument addressing the trial court's failure to apply the family gift presumption, is sustained.

Since the trial court erred as a matter of law in applying the incorrect standard as to this issue, we reverse this determination and remand this case for consideration under the proper standard as set forth in this opinion. *Coe v. Gamper*, 6th Dist. Erie No. E-77-51, 1978 WL 214754, *1 (June 16, 1978).

{¶17} Under his first assignment of error, Daniel also challenges, in a separate argument, the trial court's decision not to give him any credit for the equity in the marital residence. The trial court's ruling on the marital residence is closely related to its determination that the money Amy expended in paying off the mortgage on the marital residence was not a gift to Daniel. Thus, in light of our remand, we will not consider whether the trial court erred by not giving any credit to Daniel for the equity in the marital residence.

Accounts Receivable and Marital Monies

{¶18} The text of Daniel's first assignment of error also alleges two errors with regard to how the trial court handled $94,000 in accounts receivables and $99,000 in marital cash as equivalent, considering them to be "a wash" in the context of this divorce action. The first alleged error, which is enunciated under section "C" in the first assignment of error, states that the trial court "failed to give appellant credit for a large sum of marital cash that appellee depleted unilaterally before the final divorce decree." The brief, however, does not contain a corresponding argument that supports this assertion. The other three alleged errors listed in the

first assignment of error were separately briefed in accordance with App.R. 12(A)(2).[1] App.R. 12(A)(2), 16(A)(7).

{¶19} "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is supported by citations to legal authority and facts in the record." *Marion v. Cendol*, 3d Dist. Marion No. 9-12-59, 2013-Ohio-3197, ¶ 8, quoting *State v. Linzy*, 5th Dist. Richland No. 2012-CA-33, 2013–Ohio–1129, ¶ 33, quoting *State v. Taylor*, 9th Dist. Medina No. 2783–M, 1999 WL 61619, *3 (Feb. 9, 1999) and citing App.R. 16(A)(7). Appellant does not cite legal authority or identify facts in the record in support of this assertion. Since this error alleged in section "C" of the first assignment of error was not separately briefed and argued, we choose to overrule it pursuant to App.R. 12(A)(2).[2] *State v. White*, 6th Dist. Lucas No. L-96-215, 1997 WL 256683 (May 16, 1997), fn. 1.

{¶20} We now turn to the next alleged error included under section "D" of the first assignment of error, which states that the trial court "improperly equated cash-in-hand with pre-tax receivables." Where section "C" primarily challenges the division of specific assets, section "D" primarily addresses the trial court's valuation of these assets. Specifically, section "D" argues that the trial court wrongly considered these two assets to be equivalent and, thus, capable of offsetting each

---

[1] App.R. 12(A)(2) reads "[t]he court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief * * *."

[2] We will consider two related issues from section "D": (1) whether the trial court's decision to equate the values of the assets was against the manifest weight of the evidence and (2) whether these funds offset each other or—in the trial court's words—were "a wash." We will not consider issues related to the division of these assets, such as whether Daniel is entitled a credit for half of the marital monies spent.

other. Appellant provides arguments that attempt to establish these two sums, though roughly equivalent in dollar terms, are not equal in value. Daniel contends that these two sums are not equivalent because the full value of these accounts receivable may never be realized by payment; Daniel will have to pay taxes on the proceeds that do come in from these accounts receivable; and these accounts receivable represent revenue for the concrete business, not pure profit.

Legal Standard

**{¶21}** The valuation of property in divorce proceedings is reviewed under a manifest weight standard. *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255, 844 N.E.2d 1113, ¶ 50 (6th Dist.). "When determining the value of marital assets, a trial court is not confined to the use of a particular valuation method, but can make its own determination as to valuation based on the evidence presented." *Chattree v. Chattree*, 2014-Ohio-489, 8 N.E.3d 390, ¶ 43 (8th Dist.), citing *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995). "The trial court's judgment will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence." *Moore* at ¶ 50, citing *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶22}** In a divorce proceeding, a trial court, in a domestic relations matter, has broad discretion in arriving at an equitable distribution of marital property. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140, 1141 (1983),

citing *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). In dividing property between parties to a divorce proceeding, R.C. 3105.171(C)(1) prioritizes an equitable distribution of property over a strictly equal division of property. R.C. 3105.171(C)(1).

> **According to R.C. 3105.171(C)(1), the trial court's division of marital property shall be equal. However, if an equal division of marital property would be inequitable, the court shall instead divide it between the spouses in the manner the court determines equitable.**

*Gomer v. Gomer*, 2017-Ohio-989, --- N.E.3d ---, ¶ 23 (6th Dist.), citing R.C. 3105.171(C)(1).

**{¶23}** "It is well-established that an appellate court may not reverse a trial court's property allocation decision absent a showing of an abuse of discretion." *Gomer* at ¶ 22, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). "An abuse of discretion is more than an error of judgment. It suggests that the trial court's ruling was 'unreasonable, arbitrary or unconscionable.'" *State v. Dezanett*, 6th Dist. Wood No. WD-14-024, 2015-Ohio-1263, ¶ 9, quoting *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). "[W]hen applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308 (1990).

> **In determining whether the trial court abused its discretion, a reviewing court should not examine the valuation and division of a particular marital asset or liability in isolation. The reviewing court must, instead, view the property division under the totality of the circumstances to determine whether the property division**

**reflects an unreasonable, arbitrary or unconscionable attitude on the part of the domestic relations court.**

(Citations omitted.) *Harris v. Harris*, 6th Dist. Lucas No. L-02-1369, 2004-Ohio-683, ¶ 19, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984).

Legal Analysis

{¶24} In his first assignment of error, appellant essentially challenges the equity of the distribution of $99,000 of marital money to Amy and $94,000 of accounts receivable to Daniel. The arguments of appellant allege that this leads to an overall distribution that is inequitable as $94,000 in accounts receivable and $99,000 in a bank account are not equivalent in value even though the nominal amounts are roughly the same. The appellant compares and contrasts the attributes of the $99,000 in bank funds and $94,000 in accounts receivable, but these arguments isolate these assets from the larger context of the divorce proceeding and the distribution of assets. We find several factors important to understanding the rationale behind the trial court's decision.

{¶25} First, we begin by noting that the $99,000 in marital funds was spent pursuant to a consent order issued by the trial court. On April 8, 2015, the trial court issued a temporary consent order that required Amy to pay for the expenses of maintaining the marital residence and directed her to maintain the house using the funds from the account that had contained $99,000. Doc. 14. Tr. 142. The temporary consent order also directed Daniel to be responsible for the expenses

associated with the concrete business. Doc. 14. At trial, Amy testified that she spent the $99,000 of marital funds down to $2,500 on living expenses pursuant to this consent order. Tr. 137. She also testified that she had paid for all of the expenses of the marital residence since the time of the separation in June 2014. Tr. 114.

{¶26} Second, Amy had lost her job at Daniel's concrete business upon their separation and, thus, her primary source of income. Daniel continued to have income from the family business. Tr. 106. The $94,000 in accounts receivable represented the revenues for Daniel's concrete business from January 2014 to June 2014. Ex. F. He continued to operate the concrete business and had an income throughout this period but ceased sharing the proceeds of the business with Amy as early as February 18, 2016. Tr. 96, 135. Thus, Daniel had more to support himself than the $94,000 in accounts receivable that came into the concrete business in the first six months of 2014. While he testified that he initially had to use credit cards to pay for his living expenses, he did have a source of income through his business while Amy had no source of steady income. Tr. 30. The trial court does not appear to have considered these assets merely as stores of marital monies but as sources of funds for living expenses and business expenses during the duration of the divorce proceedings. When considered as sources of support, Daniel's business and the $99,000 in the bank account are more equivalent than a cursory comparison of the characteristics of accounts receivable and funds in a bank account would reveal.

These monies were utilized by each party to give effect to the provisions in the temporary consent order.

**{¶27}** Third, Amy changed the account numbers on the bank account containing $99,000 on the same day that she found out that Daniel had changed the location where the checks from the concrete business were received to a P.O. box that Amy could not access. Ex. 7B. Tr. 81. Daniel withheld the accounts receivable from Amy in the lead up to the separation as Amy, in turn, withheld the funds in the bank account from him. They each reserved a source of funds to cover living expenses in the divorce proceeding. Further, by the time of the trial, Amy testified that she was beginning to live off of her inheritance money to pay for living expenses. Tr.137. The trial court noted that Daniel did not contribute to Amy's support from the proceeds of the family business after she was closed out of the operation. Doc. 31. Both then relied upon the sources of funds that they had reserved for themselves prior to the separation. By the time of the divorce proceeding, these funds had been expended, making them "a wash" in the eyes of the trial court. *Id*.

**{¶28}** Our task in ruling on this particular issue is to determine whether the trial court made a ruling against the manifest weight of the evidence in determining that these assets were roughly equivalent. In reviewing the record, we find that the trial court did not make a decision against the manifest weight of the evidence when it determined that these assets offset each other in the overall distribution of property

between the parties in this case. The record provides the context of the trial court's decision and shows that there is some competent, credible evidence that supports the determination that the $99,000 in the bank account and the $94,000 in accounts receivable were "a wash." Doc. 31.

{¶29} Depending on whether Amy can carry the burden of establishing that the funds used to pay off the mortgage on the marital residence were not a gift, it is possible that the overall distribution of property may be modified by the trial court on remand. Thus, we cannot consider whether the trial court abused its discretion in the overall distribution of the property in issuing its May 9 Judgment Entry as the division of property is not yet finalized. Doc. 31. However, we can say that the $99,000 in marital funds and the $94,000 in accounts receivable do not affect the overall balance between the parties in the distribution of property as the trial court did not abuse its discretion in determining that these funds were countervailing assets and were, thus, "a wash" with respect to the overall distribution of assets. For these reasons, Daniel's first assignment of error, as to this specific argument, is overruled.

*Second Assignment of Error*

{¶30} In his second assignment of error, Daniel asserts that the trial court erred in awarding $5,000 in attorney's fees to Amy. First, he argues that Amy did not carry the burden of establishing that the fees incurred were reasonable because she only submitted the invoices she received from her attorney. Second, he argues

that the trial court did not properly provide the reasons for granting the award of attorney's fees. Third, Daniel argues that the award is inequitable because the attorney's fees were paid out of a $99,000 sum that Amy withdrew from a joint bank account and spent during her separation from Daniel. The trial court considered these spent funds to be "a wash," finding this sum to have been offset by the $94,000 in accounts receivables that Daniel had in his concrete business. On the basis of these arguments, Daniel requests that this Court either vacate the award of attorney's fee to Amy or reverse and remand this case to the trial court with instructions to provide the reasons supporting its decision to award attorney's fees to Amy.

Legal Standard

**{¶31}** R.C. 3105.73(A) governs the award of attorney's fees in actions for divorce and reads as follows:

> **In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.**

R.C. 3105.73(A). Thus, this "statute provides some factors that the court *may* consider in determining whether an award is equitable." (Emphasis sic.) *Davis v. Davis*, 2016-Ohio-1388, 62 N.E.3d 873, ¶ 19 (6th Dist.). "[A] party is not entitled to attorney's fees; rather, the trial court decides on a case-by-case basis whether

attorney's fees would be equitable." *Foster v. Foster*, 2017-Ohio-4311, --- N.E.3d ---, ¶ 57 (10th Dist.), quoting *Cryder v. Cryder*, 10th Dist. Franklin No. 07AP-546, 2008-Ohio-26, ¶ 42.

{¶32} "A trial court's decision regarding the award of attorney's fees in a divorce proceeding should not be interfered with absent a clear showing of prejudice or an abuse of discretion." *Carmony v. Carmony*, 6th Dist. Lucas No. L-02-1354, 2004-Ohio-1035, ¶ 28, citing *Birath v. Birath*, 53 Ohio App.3d 31, 39, 558 N.E.2d 63, 72 (1988). *See Rand v. Rand*, 18 Ohio App.3d 356, 359, 481 N.E.2d 609, 612 (1985). "An abuse of discretion is more than an error of judgment. It suggests that the trial court's ruling was 'unreasonable, arbitrary or unconscionable.'" *Dezanett* at ¶ 9, quoting *Xie* at 527. "[W]hen applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge." *Berk* at 169.

Legal Analysis

{¶33} R.C. 3105.73(A) gives trial court's the authority to award "all or part of reasonable attorney's fees" in an action for divorce. (Emphasis added.) R.C. 3105.73(A). Appellant cites case law from several other districts that places the burden of proving that attorney's fees were reasonable on the party requesting attorney's fees and claims that Amy did not carry this burden. *See Hubbard v. Hubbard*, Defiance App. No. 4-08-37, 2009-Ohio-2194, ¶ 12; *Bray v. Bray*, 4th Dist. Ross No. 10CA3167, 2011-Ohio-861, ¶ 46-47; *Miller v. Miller*, 9th Dist. Wayne No. 09CA0025, 2010-Ohio-1251, ¶ 29-34; *Falk v. Falk*, 10th Dist. Franklin

No. 08AP-843, 2009-Ohio-4973, ¶ 39. However, these cases also generally hold that "[a] trial court may also use its own knowledge and experience when evaluating the nature of the services rendered and the reasonableness of the fees charged." *Falk* at ¶ 39, citing *McCord v. McCord*, 10th Dist. Franklin No. 06AP-102, 2007-Ohio-164, ¶ 19. Further, of these cases, those in which an award of attorney's fees was found to be inappropriate involved situations where no supporting documentation—such as an invoice, a billing statement, or records of hourly rates—was submitted for the trial court to evaluate. *See Hubbard* at ¶ 12; *Bray* at ¶ 47-48; *Miller* at ¶ 34.

{¶34} In this case, Amy submitted documents to the court showing that she incurred $11,670 in attorney's fees. Ex. R. Consequently, the trial court's $5,000 award of attorney's fees does not amount to half of the total that Amy incurred in attorney's fees. *Id.* The nine-page invoice submitted by Amy included a list of all actions undertaken by her attorney in the course of this representation, how much time was spent on each of these tasks, and how much the attorney billed Amy for each of these undertakings. *Id.* An examination of these records shows that a trial court judge, based on his or her experience, could have found from these detailed invoices that the fees charged by Amy's attorney were reasonable and necessary for this divorce proceeding. Thus, we find this particular argument against the award of attorney's fees to be unpersuasive.

{¶35} Appellant also argues against this award on the grounds that Amy has paid for a portion of these fees from monies that were in a joint bank account prior

to the commencement of this action. We find this argument to be unpersuasive as the fact that some of these fees were paid out of funds reserved for Amy's living expenses does not, in itself, make the award of attorney's fees an abuse of discretion. While the source of these funds is a factor that can be considered in weighing the equity of awarding attorney's fees to a party, the equity of an award of attorney's fees depends on a much broader view of the situation surrounding the divorce proceeding.

{¶36} Appellant also challenges this award on the grounds that the trial court did not provide the reasons for its decision. Amy requested attorney's fees at the same time as she requested spousal support. Tr. 125. In the judgment entry, the trial court considered a variety of factors that addressed the length of the marriage, the age of the two parties, the income of both parties, the living situation of the parties, and the career prospects of both Amy and Daniel. Doc. 31. In two brief paragraphs following this analysis, the trial court awarded Amy spousal support and attorney's fees. *Id*. From the structure of the judgment entry, it appears that the trial court arrived at its conclusion in these two matters by way of considering these factors. *Id*.

{¶37} Additionally, R.C. 3105.73(A) lists several factors that a trial "court may consider" in the process of determining whether an award of attorney's fees is equitable. R.C. 3105.73(A). However, this statute ultimately commits this determination to what the trial court, in its discretion, finds to be equitable. *Id*. As

-23-

we review the record, we find that the trial court did consider a variety of factors leading up to the award of attorney's fees that are relevant to the decision to award attorney's fees in its May 9, 2016, Journal Entry. Doc. 31. Since we do not find evidence in the record that shows the trial court abused its discretion in awarding Amy attorney's fees, Daniel's second assignment of error is overruled.

*Third Assignment of Error*

{¶38} In his third assignment of error, Daniel challenges the award of spousal support. Daniel argues that the trial court improperly classified and distributed the property owned by Daniel and Amy at the time of their divorce. Since the equity of an award of spousal support is partly determined on the basis of the property distribution at the time of the divorce, Daniel argues that the award of spousal support should be reconsidered. As this determination relies upon an equitable distribution of property based upon a proper classification of that property, Daniel requests that this Court should order the trial court to revisit the issue of spousal support on remand.

Legal Standard

{¶39} A party to a divorce proceeding may request an award of spousal support. R.C. 3105.18(B). Any award of spousal support is to be made "*after* the court determines the division or disbursement of property under section 3105.171 of the Revised Code * * *." (Emphasis added.) R.C. 3105.18(B). "R.C. 3105.18(C)(1) governs the award of spousal support and sets forth a number of

factors that a trial court must consider, first, in determining whether spousal support is appropriate and reasonable, and, second, in determining the nature, amount, terms of payment, and duration of such support." *Morse v. Morse*, 6th Dist. Ottawa No. OT-16-023, 2017-Ohio-5690, ¶ 6.

**{¶40}** "A trial court judgment awarding spousal support need not address every single one of [the factors listed in R.C. 3105.18(C)(1)], but the judgment must contain sufficient detail to demonstrate that the trial court considered all the relevant factors." *Morse* at ¶ 7, citing *Allan v. Allan*, 6th Dist. Sandusky Nos. S-12-017, S-12-023, 2013-Ohio-1475, ¶ 11. "Absent an abuse of discretion, we will not reverse a trial court judgment awarding spousal support." *Morse* at ¶ 7, quoting *Hahn v. Hahn*, 6th Dist. Ottawa No. OT-16-029, 2017-Ohio-4018, ¶ 14. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *Baldonado v. Tackett*, 6th Dist. Wood No. WD-08-079, 2009-Ohio-4411, ¶ 19, citing *Blakemore* at 219. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

Legal Analysis

**{¶41}** In the first assignment of error, we concluded that the trial court erred in placing the burden of proof on Daniel to establish that the money used to pay off the mortgage on the marital residence was a gift. We sustained the appellant's first

assignment of error and remanded this case to the trial court for reconsideration of that issue under the proper standard. The distribution of marital property and income generating assets under R.C. 3105.171 may be affected by whether Amy can carry the burden of proving that the money she spent from her inheritance to pay off the mortgage on the marital residence was not a gift. Courts are directed by statute to consider the propriety of an award of spousal support *after* the equitable distribution of property has been determined because the application of the factors listed in R.C. 3105.171 depends upon the distribution of separate and marital property between the parties.

{¶42} "Since we cannot determine whether the property distribution was equitable, we cannot conclude whether the court's spousal support award constitutes an abuse of discretion." *Sicilia v. Sicilia*, 7th Dist. Columbiana No. 99-CO-66, 2001 WL 1126664 *3 (Sept. 17, 2001). *See Taylor v. Taylor*, 7th Dist. Belmont No. 01-BA-17, 2002-Ohio-6884, ¶ 22. For this reason, appellant's third assignment of error is sustained. On remand, the trial court must finalize the distribution of property before the equity of the award of spousal support can be evaluated. After the proper standard is used to determine whether Daniel is entitled to credit for equity in the marital residence, the trial court may apply the factors set forth in R.C. 3105.18(C)(1) to determine whether any adjustments to the award of spousal support are necessary.

*Conclusion*

**{¶43}** Having found no error in the particulars assigned and argued in the second assignment of error, the judgment of the trial court as to those issues is affirmed. Having found error prejudicial to the appellant in the particulars assigned and argued in the first and third assignments of error, the judgment of the trial court is reversed in part and affirmed in part as to those issues. The matter is remanded to the Court of Common Pleas of Sandusky County for further proceedings in accord with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part*
*Cause Remanded*

**PRESTON, P.J. and SHAW, J., concur.**

**/hls**

Judges Vernon L. Preston, John R. Willamowski and Stephen R. Shaw, from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.